COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-495-CR
 
  
AARON 
SHAWN PERKINS                                                      APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 213TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. Introduction
        In 
five issues, Aaron Shawn Perkins challenges the jury verdict of indecency with a 
child by contact and resulting sentence of ten years’ community supervision.
II. Background
        On 
the evening of December 14, 2001, “Miriam,” “Max,” and “Mary”[2] spent the night at the home of Aaron Shawn Perkins, the 
father of Max. Late that night, Max fell asleep on a sofa sleeper in the living 
room, and Miriam and Mary went to sleep on the floor. According to Miriam, 
Perkins, who was watching television in the room, sat down beside her and 
initially began playing with her feet. He then lay down next to her, rubbed her 
stomach, slid his hand under her pants and panties and touched her “vagina.” 
After asking “are you ok” and being told “no,” Perkins removed his hand 
and told Miriam that he had “crossed a line.” Max and Mary were asleep 
during this incident and apparently unaware that anything had occurred. After 
crying herself to sleep, the next morning Miriam played with Max and then went 
home. Her mother noticed that her eyes were puffy, and her explanation was that 
Max had poked her in the eye. When Miriam went to school on Monday, she was 
upset and at lunch wrote a note to one of her friends about what had happened. 
Miriam told her friend that she had not told anyone about it. After lunch she 
went to her next class crying, and when asked what was wrong, told another 
friend in another note about what had happened. When Miriam’s teacher, Julie 
Tomlinson, asked her to step into the hall and tell her what was wrong, Miriam 
told her teacher to ask her friend Marcy,[3] who was 
then asked to come into the hall. Marcy told the teacher what the note said had 
happened, and when asked if it was true, Miriam confirmed that it was true. The 
teacher summoned a school counselor, Yvonne Mendoza, who was initially also told 
by Marcy what Miriam had said occurred, and was subsequently told by Miriam that 
a friend’s father had “touched her in ways she was not supposed to be 
touched.” The counselor subsequently contacted Miriam’s mother, who 
contacted the police. Perkins was charged with indecency with a child by 
contact, pleaded not guilty, was found guilty by a jury, and was sentenced to 
ten years’ community supervision.
III. Ineffective Counsel
        In 
his second issue, Perkins asserts that he was afforded ineffective assistance of 
counsel because during the punishment phase of the trial his attorney offered a 
statement into evidence that the attorney described as “[Miriam]’s 
statement,” when in fact it was someone else’s statement and contained an 
assertion that Miriam had been raped, which was not otherwise evidenced at 
trial. Perkins’s counsel asked that he be allowed to publish the statement to 
the jury, which request was denied. An examination of the record reveals that 
the statement was part of a “bystanders’ bill”[4] 
made outside the presence of the jury, was not admitted in the presence of the 
jury, and was not read to the jury. The statement was not mentioned again. 
Perkins has brought forward no evidence to this court that the statement was 
seen or considered by the jury. Perkins’s second issue is overruled.
IV. Outcry
        In 
Perkins’s third and first issues, he asserts that outcry statements were 
improperly allowed into evidence and that absent those statements, the State 
failed to prove beyond a reasonable doubt the elements necessary to sustain a 
guilty verdict. In his third issue, Perkins complains that there was no proper 
outcry statement made to Miriam’s teacher, Julie Tomlinson, or to Miriam’s 
school counselor, Yvonne Mendonza, because Miriam did not speak directly to 
Tomlinson but rather to her friend, Marcy, who repeated to Tomlinson what she 
had been told by Miriam, and the same sequence of events was true of Mendoza. 
Specifically, his complaint is two-fold: first, that the outcry statement must 
be made to a person over eighteen years old, which Marcy was not, and second, 
that the outcry must be more than a general allusion that something in the 
nature of child abuse was going on. Perkins cites Texas Code of Criminal 
Procedure article 38.072 and Garcia v. State, 792 S.W.2d 88 (Tex. Crim. 
App. 1990), in support of his complaint. Tex. 
Code Crim. Proc. Ann. art. 38.072 (Vernon 2005). Hence, Perkins argues in 
his first issue that any testimony by Tomlinson or Mendoza as to Miriam’s 
statement was error and should have been excluded, and therefore “the evidence 
needed to determine guilt is not found.”
        The 
State responds that no outcry testimony at trial was elicited from Tomlinson. We 
agree. An examination of the record reveals that Tomilinson did not repeat to 
the jury anything told to her by Marcy or Miriam. She merely explained to the 
jury the sequence of events leading up to Mendoza’s involvement in the 
situation. Further, because Miriam did not recite directly to Tomlinson, 
Tomlinson was not the outcry witness. On the other hand, Mendoza testified that 
Miriam told her that
   
she had spent the night with a neighbor friend, next-door neighbor, her and 
another girl, that this was a neighborhood friend or a family friend she had 
grown up with. They had gone to sleep, her and the other girl were on the floor. 
And in the middle of the night the male friend’s father had come into the room 
and touched her in ways she wasn’t supposed to be touched.
  
With 
regard to Perkins’s first complaint that this is not a proper outcry statement 
because Mendonza was not the first person to whom Miriam communicated, he is 
incorrect. Article 38.072 of the Texas Code of Criminal Procedure requires that 
an outcry statement applies only to statements that describe the alleged offense 
that (1) were made by the child against whom the offense was allegedly 
committed; and (2) were made to the first person, eighteen years or older, other 
than the defendant, to whom the child made a statement about the offense. Tex. Code Crim. Proc. Ann. art. 38.072. 
That is exactly what occurred here. Mendoza is the first person over eighteen 
years old to whom Miriam made a statement about what had occurred.
        Citing 
Garcia, 792 S.W.2d at 91, Perkins next complains that the outcry 
statement was no more than a general allusion of what had occurred, which is 
prohibited. We disagree. In Garcia, there was only a general reference to 
an unidentified something wrong going on at home. In fact, as stated by the 
court,
  
the record is void as to any specific details of the statements 
made to Ramirez and as to any description to the alleged offenses made to 
Ramirez by the complainant. Thus, we conclude that the general phrases in 
evidence used by Ramirez and complainant, (i.e. in response to the 
prosecutor’s question “Did she further relay information to you about the 
topic you discussed?” Ramirez answered “Yes, she just wanted to talk 
about it practically all day,” and in response to the prosecutor’s 
question “What did you tell your teacher there in the classroom?”, claimant 
answered “Well, I told her what happened”), apparently did not, in 
context, and in the trial court’s view, amount to more than the general 
allusion heretofore condemned. We emphasize that from this record we cannot 
determine what it was the complainant told her teacher.
 
 
Id. 
(emphasis supplied).
 
        Such 
is not the case here. We hold that Mendoza’s testimony, in the context of a 
one-time uncomplicated touching offense including the described surrounding 
circumstances, is more than a general allusion of sexual abuse and “in some 
discernible manner describes the alleged offense,” particularly when compared 
to the circumstances in Garcia, which were “void” of “any 
description.” Id.
        Further, 
even if an improper admission of outcry testimony were made, it would be 
non-constitutional error, see Elder v. State, 132 S.W.3d 20, 27 (Tex. 
App.—Fort Worth 2004, pet. ref’d), cert. denied, 125 S. Ct. 1645 
(2005), and therefore would fall under Rule 44.2(b) of the Texas Rules of 
Appellate Procedure, which states, “Any other error, defect, irregularity, or 
variance that does not affect substantial rights must be disregarded.” Tex. R. App. P. 44.2(b). A substantial 
right is affected when the error had a substantial or injurious effect or 
influence on the jury’s verdict. King v. State, 953 S.W.2d 266, 271 
(Tex. Crim. App. 1997). We hold that the description of what occurred, even if 
general in nature, repeated by Mendoza, did not affect the substantial right of 
Perkins because a more detailed description of what occurred was given by the 
victim herself. At trial, Miriam testified in considerably more detail as to 
what occurred, including that Perkins rubbed her stomach and then “went 
down,” and that his hand went under her underwear and touched her “private 
part,” which she said was another way of saying her “vagina” [sic]. 
Perkins’s third issue is overruled. Having overruled Perkins’s third issue, 
it is unnecessary to reach the conditional first issue, which asserts that 
without the testimony of Tomlinson and Mendoza, the evidence is factually 
insufficient.
V. Marie Ornelas and Eddy Lee
        In 
issues four and five, Perkins complains that the trial court should not have 
allowed the testimony of Sergeant Marie Ornelas as to what she was told by 
another police officer, Eddy Lee, and should have granted a new trial when a 
statement signed by Eddy Lee that controverted the testimony of Sergeant Ornelas 
was provided to the court in a motion for new trial. On cross-examination, 
Sergeant Ornelas testified that Perkins had been a police officer at one time. 
Perkins’s counsel asked Sergeant Ornelas, “He was a good police officer, 
wasn’t he?” and “You’ve never seen him do anything wrong; is that 
correct?” Sergeant Ornelas was asked on re-direct, “Were you aware that Mr. 
Perkins, while he was a police officer, had to be admonished by two fellow 
police officers to stop patrolling high schools and flirting with the young 
girls?” Over defense counsel’s objection[5] the 
officer answered, “Yes sir.” During prior voir dire of the witness before 
the jury, the officer had been asked, “Were you aware that Officer Eddie Lee 
had to sit down with the Defendant and tell him to quit patrolling the high 
schools for little girls? Were you aware of that? Patrolling, going to the high 
schools to flirt and pick up little girls? Were you aware of that?” Answer: 
“That’s what Officer Lee told me.” There was no objection made to the 
question or answer.
        The 
State responds that the testimony was invited because Perkins opened the door to 
the testimony by presenting himself as a person who would not commit such an 
offense in that he was “a good police officer” and that Sergeant Ornelas had 
never seen him do anything wrong. While the subject matter may have been 
invited, the testimony was clearly hearsay but was not objected to as such, and 
an assertion of good character by the defendant, i.e., that he is not the type 
of person to commit the charged offense, allows the State to impeach such 
testimony with the introduction of similar extraneous offenses. Roberts v. 
State, 29 S.W.3d 596, 601 (Tex. App.—Houston [1st Dist.] 2000, pet. 
ref’d); see also Tex. R. Evid. 
404, 405. Additionally, the improper admission of evidence in violation of the 
rules of evidence is not a constitutional error and again falls under the 
“[a]ny other error” substantial rights provision of Rule 44.2(b) of the 
Texas Rules of Appellate Procedure. Tex. 
R. App. P. 44.2(b). There was effective cross-examination of Sergeant 
Ornelas following the brief and limited recounted exchange. On 
cross-examination, she agreed that she did not know when the admonishment 
occurred and said he believed that he left his job in good standing. She 
testified that she was unaware of any complaint about the alleged activity, and 
she acknowledged that no report was made of the alleged incident, that the 
alleged statements of Eddy Lee were not in any records of the police, and that 
she had no personal knowledge of the alleged incident. We cannot say that the 
testimony of Sergeant Ornelas affected a substantial right of Perkins.
        With 
regard to the letter from Eddy Lee disputing a portion of the Ornelas testimony, 
it is an unsworn and unverified hearsay document and does not comport exactly 
with the testimony offered at trial, but rather states that Eddy Lee did not 
make a statement that “Aaron Shawn Perkins while a police officer had been 
seen by me picking up high school girls while on duty.” This is a variation 
from the testimony at trial that Perkins had been admonished to stop patrolling 
high schools and stop “flirting” with young girls. We review the granting or 
denying of a motion for new trial under an abuse of discretion standard. See 
Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). If the motion for 
new trial alleges facts outside the record, an affidavit by someone with 
knowledge of the facts must support it. Reyes v. State, 849 S.W.2d 812, 
814 (Tex. Crim. App. 1993). An affidavit that is not verified is insufficient to 
require a hearing on a new trial. Bearden v. State, 648 S.W.2d 688, 691 
(Tex. Crim. App. 1983). We cannot say that the trial court abused its discretion 
by denying a motion for new trial based on this letter, which is not in 
affidavit form or verified. Further, it was within the trial court’s 
discretion to find that the letter did not refute the statements made at trial 
because its contents did not precisely reflect the statements made at trial. 
Perkins’s fourth and fifth issues are overruled.
VI. Conclusion
        Having 
overruled Perkins’s issues two through five and having found it unnecessary to 
reach Perkins’s conditional first issue, we affirm the judgment of the trial 
court.
   
                                                          BOB 
MCCOY
                                                          JUSTICE
 
 
 
PANEL 
A:   CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
June 23, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
The names of all minors in this case have been changed.
3. 
See note 1., supra.
4.  
Texas Rule of Appellate Procedure 33.2(c)(3) indicates that if a party is 
dissatisfied with a bill of exception filed by the judge under part (2)(C) of 
this rule, he may file three affidavits from people who observed the matter to 
which the bill of exception was addressed. Under previous Texas Rule of 
Appellate Procedure 52(c), these three people were referred to as bystanders, 
and these affidavits were referred to as a bystander’s bill. Apparently, in 
common usage, sometimes the bill of exception and bystander’s bill are 
confused or used interchangeably, which is erroneous. See Grossnickle v. 
Grossnickle, 935 S.W.2d 830, 837-38 (Tex. App.—Texarkana 1996, pet. 
denied).
5.  
“Your Honor, we’ll object under 609 [Impeachment by Evidence of Conviction 
of Crime] . . . .”