Perkins v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-495-CR

AARON SHAWN PERKINS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In five issues, Aaron Shawn Perkins challenges the jury verdict of indecency with a child by contact and resulting sentence of ten years’ community supervision.  

II.  Background

On the evening of December 14, 2001, “Miriam,” “Max,” and “Mary”
(footnote: 2) spent the night at the home of Aaron Shawn Perkins, the father of Max.  Late that night, Max fell asleep on a sofa sleeper in the living room, and Miriam and Mary went to sleep on the floor.  According to Miriam, Perkins, who was watching television in the room, sat down beside her and initially began playing with her feet.  He then lay down next to her, rubbed her stomach, slid his hand under her pants and panties and touched her “vagina.”  After asking “are you ok” and being told “no,” Perkins removed his hand and told Miriam that he had “crossed a line.”  Max and Mary were asleep during this incident and apparently unaware that anything had occurred.  After crying herself to sleep, the next morning Miriam played with Max and then went home.  Her mother noticed that her eyes were puffy, and her explanation was that Max had poked her in the eye.  When Miriam went to school on Monday, she was upset and at lunch wrote a note to one of her friends about what had happened.  Miriam told her friend that she had not told anyone about it.  After lunch she went to her next class crying, and when asked what was wrong, told another friend in another note about what had happened.  When Miriam’s teacher, Julie Tomlinson, asked her to step into the hall and tell her what was wrong, Miriam told her teacher to ask her friend Marcy,
(footnote: 3) who was then asked to come into the hall.   Marcy told the teacher what the note said had happened, and when asked if it was true, Miriam confirmed that it was true.  The teacher summoned a school counselor, Yvonne Mendoza, who was initially also told by Marcy what Miriam had said occurred, and was subsequently told by Miriam that a friend’s father had “touched her in ways she was not supposed to be touched.”  The counselor subsequently contacted Miriam’s mother, who contacted the police. Perkins was charged with indecency with a child by contact, pleaded not guilty, was found guilty by a jury, and was sentenced to ten years’ community supervision.

III.  Ineffective Counsel

In his second issue, Perkins asserts that he was afforded ineffective assistance of counsel because during the punishment phase of the trial his attorney offered a statement into evidence that the attorney described as “[Miriam]’s statement,” when in fact it was someone else’s statement and contained an assertion that Miriam had been raped, which was not otherwise evidenced at trial.  Perkins’s counsel asked that he be allowed to publish the statement to the jury, which request was denied.  An examination of the record reveals that the statement was part of a “bystanders’ bill”
(footnote: 4) made outside the presence of the jury, was not admitted in the presence of the jury, and was not read to the jury. The statement was not mentioned again.  Perkins has brought forward no evidence to this court that the statement was seen or considered by the jury.  Perkins’s second issue is overruled.

IV.  Outcry

In Perkins’s third and first issues, he asserts that outcry statements were improperly allowed into evidence and that absent those statements, the State failed to prove beyond a reasonable doubt the elements necessary to sustain a guilty verdict.  In his third issue, Perkins complains that there was no proper outcry statement made to Miriam’s teacher, Julie Tomlinson, or to Miriam’s school counselor, Yvonne Mendonza, because Miriam did not speak directly to Tomlinson but rather to her friend, Marcy, who repeated to Tomlinson what she had been told by Miriam, and the same sequence of events was true of  Mendoza.  Specifically, his complaint is two-fold:  first, that the outcry statement must be made to a person over eighteen years old, which Marcy was not, and second, that the outcry must be more than a general allusion that something in the nature of child abuse was going on.  Perkins cites Texas Code of Criminal Procedure article 38.072 and 
Garcia v. State
, 792 S.W.2d 88 (Tex. Crim. App. 1990), in support of his complaint.  
Tex. Code Crim. Proc. Ann.
 art. 38.072 (Vernon 2005).  Hence, Perkins argues in his first issue that any testimony by Tomlinson or Mendoza as to Miriam’s statement was error and should have been excluded, and therefore “the evidence needed to determine guilt is not found.” 

The State responds that no outcry testimony at trial was elicited from  Tomlinson.  We agree.  An examination of the record reveals that  Tomilinson did not repeat to the jury anything told to her by Marcy or Miriam.  She merely explained to the jury the sequence of events leading up to Mendoza’s involvement in the situation.  Further, because Miriam did not recite directly to Tomlinson, Tomlinson was not the outcry witness.  On the other hand,  Mendoza testified that Miriam told her that 

she had spent the night with a neighbor friend, next-door neighbor, her and another girl, that this was a neighborhood friend or a family friend she had grown up with.  They had gone to sleep, her and the other girl were on the floor.  And in the middle of the night the male friend’s father had come into the room and touched her in ways she wasn’t supposed to be touched.

With regard to Perkins’s first complaint that this is not a proper outcry statement because Mendonza was not the first person to whom Miriam communicated, he is incorrect.  Article 38.072 of the Texas Code of Criminal Procedure requires that an outcry statement applies only to statements that describe the alleged offense that (1) were made by the child against whom the offense was allegedly committed; and (2) were made to the first person, eighteen years or older, other than the defendant, to whom the child made a statement about the offense.  
Tex. Code Crim. Proc. Ann.
 art. 38.072.  That is exactly what occurred here.  Mendoza is the first person over eighteen years old to whom Miriam made a statement about what had occurred.  

Citing 
Garcia
, 792 S.W.2d at 91, Perkins next complains that the outcry statement was no more than a general allusion of what had occurred, which is prohibited.  We disagree.  In 
Garcia
, there was only a general reference to an unidentified something wrong going on at home.  In fact, as stated by the court, 

the record is 
void 
as to 
any
 specific details of the statements made to Ramirez and as to 
any
 description to the alleged offenses made to Ramirez by the complainant.  Thus, we conclude that the general phrases in evidence used by Ramirez and complainant, (i.e. in response to the prosecutor’s question “Did she further relay information to you about the topic you discussed?” Ramirez answered “Yes, 
she just wanted to talk about it practically all day
,” and in response to the prosecutor’s question “What did you tell your teacher there in the classroom?”, claimant answered “Well, 
I told her what happened
”), apparently did not, in context, and in the trial court’s view, amount to more than the general allusion heretofore condemned.  
We emphasize that from this record we cannot determine what it was the complainant told her teacher. 

Id. 
(emphasis supplied).

Such is not the case here.  We hold that Mendoza’s testimony, in the context of a one-time uncomplicated touching offense including the described surrounding circumstances, is more than a general allusion of sexual abuse and  “in some discernible manner describes the alleged offense,” 
particularly when compared to the circumstances in 
Garcia
, which were “void” of “any description.”  
Id
.

Further, even if an improper admission of outcry testimony were made, it would be non-constitutional error,
 see Elder v. State
, 132 S.W.3d 20, 27 (Tex. App.—Fort Worth 2004, pet. ref’d), 
cert. denied
, 125 S. Ct. 1645 (2005), and therefore would fall under Rule 44.2(b) of the Texas Rules of Appellate Procedure, which states, “Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.”  
Tex. R. App. P.
 44.2(b).  A substantial right is affected when the error had a substantial or injurious effect or influence on the jury’s verdict.  
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  We hold that the description of what occurred, even if general in nature, repeated by Mendoza, did not affect the substantial right of Perkins because a more detailed description of what occurred was given by the victim herself.  At trial, Miriam testified in considerably more detail as to what occurred, including that Perkins rubbed her stomach and then “went down,” and that his hand went under her underwear and touched her “private part,” which she said was another way of saying her “vagina” [sic].  Perkins’s third issue is overruled.  Having overruled Perkins’s third issue, it is unnecessary to reach the conditional first issue, which asserts that without the testimony of Tomlinson and Mendoza, the evidence is factually insufficient.

V.  Marie Ornelas and Eddy Lee

In issues four and five, Perkins complains that the trial court should not have allowed the testimony of Sergeant Marie Ornelas as to what she was told by another police officer, Eddy Lee, and should have granted a new trial when a statement signed by Eddy Lee that controverted the testimony of Sergeant Ornelas was provided to the court in a motion for new trial.  On cross-examination, Sergeant Ornelas testified that Perkins had been a police officer at one time.  Perkins’s counsel asked Sergeant Ornelas, “He was a good police officer, wasn’t he?” and “You’ve never seen him do anything wrong; is that correct?”  Sergeant Ornelas was asked on re-direct, “Were you aware that Mr. Perkins, while he was a police officer, had to be admonished by two fellow police officers to stop patrolling high schools and flirting with the young girls?”  Over defense counsel’s objection
(footnote: 5) the officer answered, “Yes sir.”  During prior voir dire of the witness before the jury, the officer had been asked, “Were you aware that Officer Eddie Lee had to sit down with the Defendant and tell him to quit patrolling the high schools for little girls?  Were you aware of that?  Patrolling, going to the high schools to flirt and pick up little girls?  Were you aware of that?”  Answer:  “That’s what Officer Lee told me.”  There was no objection made to the question or answer. 

The State responds that the testimony was invited because Perkins opened the door to the testimony by presenting himself as a person who would not commit such an offense in that he was “a good police officer” and that Sergeant Ornelas had never seen him do anything wrong.  While the subject matter may have been invited, the testimony was clearly hearsay but was not objected to as such, and an assertion of good character by the defendant, i.e., that he is not the type of person to commit the charged offense, allows the State to impeach such testimony with the introduction of similar extraneous offenses.  
Roberts v. State
, 29 S.W.3d 596, 601 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d); 
see also 
Tex. R. Evid.
 404, 405.  Additionally, the improper admission of evidence in violation of the rules of evidence is not a constitutional error and again falls under the “[a]ny other error” substantial rights provision of Rule 44.2(b) of the Texas Rules of Appellate Procedure.  
Tex. R. App. P.
 44.2(b).  There was effective cross-examination of Sergeant Ornelas following the brief and limited recounted exchange.  On cross-examination, she agreed that she did not know when the admonishment occurred and said he believed that he left his job in good standing.  She testified that she was unaware of any complaint about the alleged activity, and she acknowledged that no report was made of the alleged incident, that the alleged statements of Eddy Lee were not in any records of the police, and that she had no personal knowledge of the alleged incident.  We cannot say that the testimony of Sergeant Ornelas affected a substantial right of Perkins.

With regard to the letter from Eddy Lee disputing a portion of the Ornelas testimony, it is an unsworn and unverified hearsay document and does not comport exactly with the testimony offered at trial, but rather states that Eddy Lee did not make a statement that “Aaron Shawn Perkins while a police officer had been seen by me picking up high school girls while on duty.”  This is a variation from the testimony at trial that Perkins had been admonished to stop patrolling high schools and stop “flirting” with young girls.  We review the granting or denying of a motion for new trial under an abuse of discretion standard.  
See Lewis v. State
, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).  If the motion for new trial alleges facts outside the record, an affidavit by someone with knowledge of the facts must support it.  
Reyes v. State
, 849 S.W.2d 812, 814 (Tex. Crim. App. 1993).  An affidavit that is not verified is insufficient to require a hearing on a new trial.  
Bearden v. State
, 648 S.W.2d 688, 691 (Tex. Crim. App. 1983).  We cannot say that the trial court abused its discretion by denying a motion for new trial based on this letter, which is not in affidavit form or verified.  Further, it was within the trial court’s discretion to find that the letter did not refute the statements made at trial because its contents did not precisely reflect the statements made at trial.  
Perkins’s fourth and fifth issues are overruled.

VI.  Conclusion

Having overruled Perkins’s issues two through five and having found it unnecessary to reach Perkins’s conditional first issue, we affirm the judgment of the trial court.

BOB MCCOY

JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  June 23, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
The names of all minors in this case have been changed.

3:
See
 note 1., 
supra
.

4:
Texas Rule of Appellate Procedure 33.2(c)(3) indicates that if a party is dissatisfied with a bill of exception filed by the judge under part (2)(C) of this rule, he may file three affidavits from people who observed the matter to which the bill of exception was addressed.  Under previous Texas Rule of Appellate Procedure 52(c), these three people were referred to as bystanders, and these affidavits were referred to as a bystander’s bill.  Apparently, in common usage, sometimes the bill of exception and bystander’s bill are confused or used interchangeably, which is erroneous.  
See Grossnickle v. Grossnickle
, 935 S.W.2d 830, 837-38 (Tex. App.—Texarkana 1996, pet. denied).

5:
“Your Honor, we’ll object under 609 [Impeachment by Evidence of Conviction of Crime] . . . .”