**Mickey Dean GARCIA, Appellant,**

v.

**STATE of Texas, Appellee.**

**Nos. 165–89, 166–89.**

Court of Criminal Appeals of Texas, En Banc.

June 20, 1990.

Jose Antonio Gomez, Edinburg, for appellant.

Benjamin Euresti, Jr., Dist. Atty. and Luis V. Saenz, Asst. Dist. Atty., Brownsville, Robert Huttash, State's Atty., Austin, for the State.

### OPINION ON APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW

MILLER, Judge.

This Court granted appellant's petitions for discretionary review in order to determine whether the court of appeals erred in holding hearsay testimony was properly admitted pursuant to the provisions of Article 38.072, V.A.C.C.P., which deals with evidentiary hearsay exceptions in child abuse cases. Tex.R.App.Pro., Rule 200(c)(2) & (4). Appellant was convicted by a jury of indecency with a child and aggravated sexual assault pursuant to V.T.C.A. Penal Code Sections 21.11 and 22.021(a)(1)(B). The jury assessed punishment at concurrent terms of ten and twenty years in the Texas Department of Corrections, respectively, plus a $1,000 fine. The court of appeals affirmed the convictions. *Garcia v. State*, 760 S.W.2d 817 (Tex.App.—Corpus Christi 1988). We affirm the judgment of the court of appeals.

In these petitions for discretionary review, appellant complains that witness Herman Muniz was improperly designated by the trial court as the outcry witness under Article 38.072 of the Texas Code of Criminal Procedure, and that testimony elicited from Muniz regarding statements made to him by complainant was therefore inadmissable hearsay. Appellant contends that Betty Ramirez, complainant's first grade teacher, was the first person eighteen years old or older to whom the victim had given a statement describing the alleged offense.

The record reflects that on April 23, 1987, complainant was seven years old, attending first grade, and residing with her natural mother and her stepfather, appellant Mickey Dean Garcia. Complainant's first grade teacher, Betty Ramirez, attended a child abuse seminar put on by the school nurse that day. Upon her return to the classroom, Ramirez explained to the children in her classroom that she had been in a session regarding sexual abuse. Her testimony in part is as follows:

RAMIREZ: So I went back into the classroom and I told my students, "Well, I was in a session about sexual abuse and I'd like to know if anybody in this classroom has ever been"—I had to go down to their level and ask them, "Has anyone ever touched your private parts of any kind? Has anyone ever treated you in a bad way that you felt was wrong but that you were afraid to tell someone?" Several hands raised and [complainant] was one of my students and her hand raised up.

\* \* \* \* \* \*

When she raised her hand she came up to my desk and she told me she was having problems at home.

\* \* \* \* \* \*

... she voluntarily came up to my desk and she just wanted to tell me a lot of things, what was going on at home.

PROSECUTOR: Regarding the topic that you had just discussed?

RAMIREZ: Exactly.

* * * * * *

PROSECUTOR: ... the third time how long did you speak to her?

RAMIREZ: I spoke to her about—I asked her to come to a table where we could be alone. And she just talked to me for maybe 10 minutes or 15 minutes.

PROSECUTOR: Did she further relay information to you about the topic you discussed?

RAMIREZ: Yes, she just wanted to talk about it practically all day.

During the course of Ramirez's testimony, defense counsel objected to hearsay evidence regarding statements the complainant made to Ramirez. The objection was sustained. Thus there was no further elaboration from Ramirez as to the content of the statements. No attempt was made by the State at any time during the trial to designate this witness as the outcry witness.

Later in the trial, Herman Muniz testified for the State. On April 23, 1987, Muniz was employed by the Texas Department of Human Services as a Child Protective Specialist Two. After a hearsay objection by the defense to Muniz's testimony regarding statements made to him by complainant, the State requested an exception to the hearsay rule, pursuant to Article 38.072, V.A.C.C.P. and in accordance with the State's notification to the defense that the State would seek the exception with this witness. A hearing was held outside the presence of the jury, and Muniz testified in detail as to the complainant's description to him of the alleged offense. The defense did not attempt to show during this outcry witness designation hearing that Ramirez, not Muniz, was the first person to whom a descriptive statement about the offense was made. The defense did not specify in any objection that it thought Ramirez or anyone other than Muniz should have been designated as the outcry witness. The trial court ruled that Muniz was the outcry witness.

During the complainant's testimony, the following excerpts are pertinent to the outcry question.

PROSECUTOR: Okay. Before you told me who else did you tell?

COMPLAINANT: The other man, David Betancourt.

PROSECUTOR: David Betancourt. And what about the other man?

COMPLAINANT: Herman.

PROSECUTOR: Muniz? You told him, too?

COMPLAINANT: Yes.

PROSECUTOR: You told your teacher Betty Ramirez?

COMPLAINANT: Yes.

PROSECUTOR: Where did you tell her?

COMPLAINANT: One was in the principal's office.

PROSECUTOR: Who took you in the principal's office?

COMPLAINANT: My teacher.

PROSECUTOR: After you told her what happened she took you to the principal?

COMPLAINANT: Yes.

* * * * * *

PROSECUTOR: What did you tell your teacher there in the classroom?

COMPLAINANT: Well, I told her what happened.

Appellant complains that Ramirez should have been designated as the outcry witness because she was the first person, 18 years old or older to whom the complainant made a "statement about the offense". Article 38.072, V.A.C.C.P.

◼ In resolving this issue we are called upon to interpret the meaning of the phrase "statement about the offense" in Article 38.072, supra, the pertinent part of which reads as follows:

Sec. 2(a) This article applies only to statements that describe the alleged offense that:

(1) were made by the child against whom the offense was allegedly committed; and

(2) were made to the **first person**, 18 years of age or older, other than the defendant, to whom the child made a **statement about the offense.**

(Emphasis supplied). This Court interprets [1] the above highlighted portion of the statute to mean that the outcry witness must be the first person, 18 years old or older, to whom the child makes a statement that in some discernible manner describes the alleged offense. We believe that the statement must be more than words which give a general allusion that something in the area of child abuse was going on. In picking the particular wording of the "first person" requirement, the legislature was obviously striking a balance between the general prohibition against hearsay and the specific societal desire to curb the sexual abuse of children. See generally *Ohio v. Osborne*, ―― U.S. ――, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990). That balance is the focal point of our analysis. The portion of the statute catering to the hearsay prohibition demands that only the "first person" is allowed to testify. But the societal interest in curbing child abuse would hardly be served if all that "first person" had to testify to was a general allegation from the child that something in the area of child abuse was going on at home. Thus we decline to read the statute as meaning that any statement that arguably relates to what later evolves into an allegation of child abuse against a particular person will satisfy the requisites of Sec. 2(a)(2). The statute demands more than a general allusion of sexual abuse.

We recognize that in this area a great deal of the trial court's attention will be warranted. The parlance of children is often not exact, and generalities can be misleading. The determination of who the "first person" who was given a "statement about the offense" is, may sometimes be a difficult one that demands close scrutiny by the trial judge.

■■■■ In the case at bar the trial court ruled that Muniz, not Ramirez, was the outcry witness. In order to be designated as the outcry witness by the trial court, one element that must be clearly shown by the evidence is that the victim described the offense to that witness. From numerous examples in the record, we see that the complainant told her teacher that something had happened at home, and that it had to do with child abuse. However, the record is void as to any specific details of the statements made to Ramirez and as to any description of the alleged offenses made to Ramirez by the complainant. Thus we conclude that the general phrases in evidence used by Ramirez and complainant, (i.e. in response to the prosecutor's question "Did she further relay information to you about the topic you discussed?", Ramirez answered "Yes, she just wanted to talk about it practically all day", and in response to prosecutor's question "What did you tell your teacher there in the classroom?", complainant answered "Well, I told her what happened"), apparently did not, in context, and in the trial court's view, amount to more than the general allusion heretofore condemned.

We emphasize that from this record we cannot determine what it was the complainant told her teacher. Indeed, this is due in part to the defense objecting to the teacher narrating what was said. The State did lay a proper predicate that Muniz was the outcry witness, however. After which the defense had ample opportunity to recall Ramirez in an attempt to rebut this predicate, but failed to do so. Nor did the defense elicit testimony from the complainant re-

---

1. In determining our interpretation of this statute, we turn to V.T.C.A., Government Code § 311.023 which deals with statute construction aids. It reads as follows:

In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the:
  (1) object sought to be attained;
  (2) circumstances under which the statute was enacted;
  (3) legislative history;
  (4) common law or former statutory provisions, including laws on the same or similar subjects;
  (5) consequences of a particular construction;
  (6) administrative construction of the statute; and
  (7) title (caption), preamble, and emergency provision.

garding the specifics of the statements she made to Ramirez. In the absence of any such clarification, the trial court ruled, on the evidence before it, as to designation of the outcry witness.[2]

A trial court's findings will be upheld when they are supported by the evidence, and a trial court has broad discretion in determining the admissibility of such evidence. The exercise of that discretion will not be disturbed unless a clear abuse of that discretion is established by the record. This Court finds no abuse of discretion by the trial court in its determination that Muniz was the outcry witness as contemplated by Article 38.072, V.A.C.C.P., and thus, the trial court ruled correctly concerning the admissibility of the hearsay exception evidence. Appellant's ground for review in both cases is overruled. The judgment of the court of appeals is affirmed.

CLINTON, Judge, dissenting.

The majority construes "the first person ... to whom the child made a statement about the offense" under Article 38.072 V.A.C.C.P. to mean something broader than it supposes the child in this case told the teacher. The rationale of the majority opinion not only alleviates the evidentiary proponent of its burden of proof on the "first person" issue, but misapprehends the legislative intent to provide procedural protections to strengthen the reliability of otherwise inadmissible hearsay evidence.

Article 38.072, supra, "applies only to statements that describe the alleged offense that ... were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense." Article 38.-072, § 2(a)(2), supra. The original bill creating this section allowed "all hearsay statements of a child victim under 13 to be admitted into evidence." Bill Analysis, H.B. 579, 69th Legislature (1985). This more expansive portion of the bill was re-placed with the express limitation of the hearsay exception to "the first person" to whom the child describes the alleged offense. See *id.* The bill also amended the Family Code with a section substantially identical to Article 38.072. See V.T.C.A. Family Code, § 54.031. Thus, the legislative intent—the "focal point" of the majority's analysis—was not only to create a narrow hearsay exception in offenses relating to the physical and sexual abuse of children, but also to permit the admission of the statements only after certain procedural safeguards are met.

The safeguard deemed particularly important by the Legislature is the limitation of hearsay witnesses to the *first person* to whom the child reports the offense. The requirement that the hearsay witness be the first person to receive the child's story represents a balance between the necessity of introducing the child's statements through an adult witness and the necessity of avoiding the dangers implicit in hearsay itself. As commentators have observed,

"Human belief evidence is inherently susceptible to certain defects, which fall into four categories traditionally called the 'hearsay dangers.' First, a belief may be erroneous because it results from a false impression of objective reality—a defect in perception—a lamentably common product of our imperfect physical and psychological faculties. Second, even a true perception may yield a false belief at a later time because of the tricks of human memory: the unconscious scrambling and regrouping of elements drawn from disparate experiences and from fantasies. Third, even an accurate memory of one person may mislead when used as evidence by another, if it is accidentally communicated imperfectly. However carefully focused, our instruments of communication, both verbal and nonverbal, may be clouded by ambiguity and its counterpart, misinterpretation. Finally, a valid memory may be falsified intentionally."

---

**2.** We note that the dissent raises an argument that the child also talked to the principal prior to her conversation with Muniz. Since this contention was not made in appellant's brief, nor referenced in the record by any of the briefs, we do not have said contention before us to address.

Goode, Wellborn, and Sharlot, Texas Rules of Evidence: Civil and Criminal, § 8.01.1 (Texas Practice 1988).

The restriction to the first person greatly reduces the hearsay dangers peculiar to children. While children may well be as trustworthy as adults in relating events they have actually experienced, they nevertheless remain more vulnerable to suggestion, unintentional or otherwise, and are more easily influenced by the various authority figures involved in the often traumatic ordeal of a sexual abuse allegation. By limiting the statements of sexual or physical abuse to the child's *first* conversation, the hearsay evidence is made more reliable not only because the child's initial disclosure is more likely a self-motivated account of what the child herself remembers, but also because the original statements are untainted by the subtle influences of subsequent interrogators. Each time the child relates the story to a new adult, the risks that the story may be altered or nuances added to please the listener multiply. The statutory limitation also marks in time the circumstances of the child's disclosure, facts often helpful to the factfinder in such cases. Indeed, the admissibility of the hearsay evidence is contingent in part on the trial court's findings that the statement is reliable "based on the time, content, and circumstances of the statement." Article 38.072 § 2(a)(2), supra.

The need to avoid these hearsay dangers would be ill-served by permitting, as the original bill did, *all hearsay statements* to be admitted. The Legislature recognized this chief defect in the original bill, rejected this provision and substituted instead the "first person" limitation, now an integral specification of Article 38.072.

It is clear from the majority's recitation of the facts that the child's teacher, Betty Ramirez, was "the first person" whom the child told about an alleged offense:

"PROSECUTOR: You told your teacher Betty Ramirez?
COMPLAINANT: Yes.

    *     *     *     *     *     *

PROSECUTOR: What did you tell your teacher there in the classroom?

COMPLAINANT: Well, I told her what happened."

The teacher herself also confirmed that the child "talked to me for maybe 10 minutes or 15 minutes" that morning, and that the child "further relay[ed] information" to her about sexual abuse, wanting to "talk about it practically all day." Thus the majority correctly concludes that the teacher really was the "first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense." Article 38.072, § 2(a)(2), supra.

The teacher later took the complainant to her principal's office where she left the child. Then, later in the afternoon, the child again gave statements to David Betancourt and Herman Muniz. Thus, Muniz is arguably the third or fourth person to whom the child told her story. Yet the majority attempts to make Muniz the "first person" under the statute by construing Article 38.072 § 2(a)(2), supra, to mean "more than mere words which give a general allusion that something in the area of child abuse was going on."

The majority's conclusion that the statements made to the teacher were *not* "more than mere words which give a general allusion" is as supportable by the record as a conclusion to the contrary. The child talked to the teacher for at least ten or fifteen minutes, and apparently related enough about the topic of sexual abuse to motivate the teacher to take the child to the principal. Whatever the complainant conveyed to her teacher and principal, the principal felt it necessary to call the Department of Human Services. And whatever the principal related in her phone call to DHS, the Department almost immediately sent two specialists to the school to interview the child. Under these facts, we can just as easily infer that the child's statements to her teacher *were* more than "a general allusion."

The majority's rationale at arriving at its conclusion about the child's statements to her teacher is puzzling. The majority readily concedes that *"the record is void* as to any specific details of the statements made to Ramirez [the teacher] and *as to*

*any description* of the alleged offenses made to Ramirez by the complainant." (emphasis added.) How this Court can "emphasize that from this record we cannot determine what it was the complainant told her teacher," yet determine that whatever the child said it could not have amounted to a "description," is a bewildering twist in reason.

Moreover, it is unnecessary to even reach the question about the meaning of the highlighted portion of the statute which the majority construes. This court need not decide whether the child's statements to her teacher—admittedly unknowable from the record—fits the majority's definition of "description." The real issue in this case is not statutory construction but the procedural consequences of a failure to comply with the basic provisions of Article 38.072. In other words, the issue for this court is not the evidentiary question about the sufficiency of proof, but the procedural question about burden of proof.

Under this article, "the party intending to offer the statement" must provide both "the name of the witness through whom it intends to offer the statement" and a "written summary of the statement" to the adverse party at least fourteen days before trial. Article 38.072 § 2(b). That witness, under § 2(a), must be "the first person ... to whom the child made a statement about the offense." Here the State, the party offering the statement, failed to provide either the first person's name [Betty Ramirez, the teacher] or a summary of the child's statement to her teacher. Instead, the State designated *Muniz* as the witness

through whom it intended to offer the child's statement.[1] In doing so, the State might have misled appellant about the identity of the first person who received the child's story, and certainly circumvented the procedural safeguards which the statute explicitly creates and demands be met.

One of the primary reasons for the exclusion of hearsay from the jury is its lack of reliability. The statute ameliorates this defect of hearsay evidence by ensuring that the opposing party not only be given notice that it will be introduced, but also be provided the witness's name and a summary of the proposed evidence at least fourteen days before trial.[2] This gives the opposing party the opportunity to investigate the witness and the "time, content, and circumstances of the statement", and thereby prepare for the reliability hearing also required under the statute. See Article 38.-071 § 2(b)(2), supra. Having been given this opportunity for investigation and preparation, the adverse party may then reveal to the trial court any reasons which might exist for doubting the reliability of the hearsay. Even if the trial court finds that the hearsay is reliable enough to be admitted as substantive evidence of the guilt or innocence of the accused, the statements remain inadmissible unless the child testifies or is available to testify, as required by § 2(b)(3) of the statute. By requiring the testimony or availability of both the speaker (the child) and the listener (the outcry witness), the adverse party is ensured the opportunity to highlight for the factfinder any contradictions about the statements through trial examination and cross-exami-

---

1. The majority notes that "[n]o attempt was made by the State at any time during the trial to designate this witness as the outcry witness." Of course, such an attempt would have also violated the procedural requirements of the article because the State did not give notice at least 14 days in advance of trial.

2. Article 38.072, § 2(b), is the procedural portion of the statute:
"A statement that meets the requirements of Subsection (a) of this article is not inadmissible because of the hearsay rule if:
(1) on or before the 14th day before the date the proceeding begins, the party intending to offer the statement:

(A) notifies the adverse party of its intention to do so;
(B) provides the adverse party with the name of the witness through whom it intends to offer the statement; and
(C) provides the adverse party with a written summary of the statement;
(2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and
(3) the child testifies or is available at the proceeding in court or in any other manner provided for by law."

nation. Through these safeguards, what is otherwise rank hearsay can be more confidently admitted for the factfinder's consideration as reliable substantive evidence of the guilt or innocence of the accused.

In this case, the defendant was given notice about two weeks before trial that Muniz was the first person to whom the child described the offense. When Ramirez began describing what the child told her, the defense—likely relying upon the State's designation of *Muniz* as the first person—objected to the teacher's hearsay. The objection was sustained. By the time Muniz testified, it was clear that Muniz was *not* the "first person," and the defense objected that Muniz's testimony was hearsay. The trial court overruled the objection and, after the required hearing, designated Muniz as the "first person."

The State invoked Article 38.072 to admit Muniz's testimony, but then completely failed to comply with § 2(a)'s requirements. It is the burden of the proponent of evidence to lay the proper predicate for its admission; failure to do so renders the proffered evidence inadmissible. Because Muniz's testimony is indeed hearsay not shown to fit Article 38.072's exception, the defendant's objection to Muniz's testimony as hearsay should have been sustained.

The trial court's overruling of this hearsay objection was erroneous, and the appellate court should have conducted a harm analysis under Tex.R.App.Pro., Rule 81(b)(2). Instead, the appellate court found "no violation of Article 38.072" on the misguided rationale that "Ramirez did not testify about any statement made by [the complainant] that described the alleged sexual offenses."

Like that appellate court, the majority seems to assume that it was the defendant's burden to develop Ramirez's testimony and prove that she was in fact the first person to whom the child described the offense. Such an assumption is squarely contrary to Article 38.072 § 2(b)(1)(A), (B) and (C), which explicitly places the burden of designating the outcry witness on "the party intending to offer the statement."

The State bypassed each and every one of Article 38.072's mandated procedures simply by selecting Muniz as the "first person," and thereby subverted the whole legislative purpose to give the adverse party notice in advance of trial and to ensure the reliability of evidence before its admission to the jury. By misidentifying the "first person," the State was able to utilize 38.072 without meeting any of its requirements. It seems rather inconsonant that the Legislature meant to permit "the adverse party" to profit from this statute by sidestepping the panoply of safeguards which this very statute explicitly provides. Because the majority opinion addresses none of these concerns, I respectfully dissent.

TEAGUE and STURNS, JJ., join.