# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00039-CR

**Jeremy Wayne Dorsey, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT
NO. 2009-081, HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted Jeremy Wayne Dorsey of one count of aggravated sexual assault of a child (count one), one count of indecency with a child by contact (count two), and one count of indecency with a child by exposure (count three). *See* Tex. Penal Code Ann. §§ 21.11, 22.021 (West Supp. 2009). Dorsey pled true to four enhancement allegations, and the jury assessed punishment at fifty years' imprisonment and a $10,000 fine for count one, fifty years' imprisonment and a $10,000 fine for count two, and twenty years' imprisonment and a $10,000 fine for count three. Dorsey raises two issues on appeal, arguing that the trial court erred in: (1) allowing a family friend of the victim to testify as an outcry witness, and (2) allowing a forensic interviewer to testify as an outcry witness. Because we conclude that the trial court did not abuse its discretion in admitting the witnesses' testimony, we affirm the trial court's judgments.

## BACKGROUND

The record shows that in 2006 and 2007, the victim in this case, S.M., lived in an apartment in Luling with her mother and her mother's boyfriend, Dorsey. During that time, S.M. was approximately eleven and twelve years' old.[1] In September 2008, Detective Michael Collie of the Luling Police Department received information that S.M. may have been the victim of sexual assault.[2] Collie interviewed S.M. at her mother's apartment, and S.M. denied that she had been sexually abused. A caseworker at Child Protective Services ("CPS"), Laurie Tapia, interviewed S.M. at S.M.'s school. S.M. again denied that Dorsey had sexually abused her.

In approximately November 2008, Collie learned of another allegation of sexual abuse involving S.M. when a dispatcher contacted him and informed him that someone had called the dispatch office to report the alleged abuse. The allegation originated with Rebekah Young, a woman about ten years older than S.M. who was a friend of S.M.'s family and who sometimes babysat for S.M. Young testified that she was talking to S.M. one day when S.M. told her that Dorsey had sexually abused her. Young testified that S.M. told her that Dorsey had told S.M. to change into short shorts and low-cut shirts, that he had slapped or pinched her buttocks, and that he had "fingered" her. Upon learning of the allegations, Young notified the counselor at S.M.'s junior-high school. Young testified that she also moved S.M. into her home to get her away from Dorsey.

After learning of the second allegation of abuse, Caseworker Laurie Tapia conducted another interview of S.M. at S.M.'s school. S.M. again denied the allegations. When

---

[1] At the time of trial, S.M. was fourteen years old.

[2] The record indicates only that Detective Collie received a referral from Child Protective Services and that a friend of S.M.'s mother made the initial report.

Detective Collie learned of the second allegation of abuse, he went to S.M.'s school to speak with the school counselor. The counselor told Collie that S.M. was no longer living with her mother and Dorsey in Luling and that she had moved in with Young in Prairie Lea. Collie contacted Young and asked her to take S.M. to be interviewed at a child-advocacy center in San Marcos.

Young took S.M. to the child-advocacy center a short time later. There, Melissa Rodriguez, a forensic interviewer, conducted an interview of S.M. Rodriguez testified that during the interview, S.M. told her about a time when Dorsey had pulled down his basketball shorts and shown her his penis.

At trial, S.M. testified about the instances of sexual abuse committed by Dorsey while S.M. lived with her mother and Dorsey. Specifically, S.M. testified about occasions when her mother was gone, usually at work, and S.M. and Dorsey would be "wrestling around." S.M. testified that while they were wrestling, Dorsey would start biting her neck and telling her that he was sucking her blood. She testified that he would then try to put his fingers on or in her vagina. She testified that he put his hand on her vagina about ten times at "different periods of time" and that he also put his fingers inside her vagina.[3] She testified that whenever this happened, she would tell Dorsey to stop and then she would "get away from the situation" by going into the bathroom until her mother got home from work. She also testified about an occasion when Dorsey showed her his penis. Specifically, she testified that while she and Dorsey were wrestling on a bed, he started biting her neck, and she stood up. She testified that Dorsey was holding her hand and that she said, "I don't

---

[3] S.M. did not testify as to whether digital penetration occurred on more than one occasion.

want to do this." She testified that he said, "It'll be okay," and that he then pulled out his penis and showed it to her. She described his penis as white and hairy. She testified that after Dorsey exposed his penis, she went into the bathroom for thirty to forty minutes. S.M. also testified that Dorsey had told her to wear short shorts, which she testified were tight and similar to underwear.

S.M. testified that at some point after the abuse began, she told her mother, her friend M.G., and M.G.'s grandmother about the abuse. S.M. testified that her mother told S.M.'s grandmother that she did not believe S.M.'s allegations. S.M. further testified that her mother did not do anything about the abuse but rather told her not to tell anyone else about it because her mother did not want CPS to get involved in the situation. S.M. testified that her mother also threatened to overdose on cocaine if S.M. told anyone else about the abuse. S.M. explained that she denied the allegations when she was initially interviewed by Collie and Tapia because she was afraid her mother would hurt herself. S.M. testified that she also spoke of the abuse to a male friend of her mother's, who was the person who initially reported the abuse to CPS. In addition, S.M. testified that she told her school counselor and Young "the basic stuff" about what Dorsey did to her. Finally, she testified that she told Rodriguez, the forensic interviewer, about the abuse.

After S.M. told Rodriguez about the abuse, Detective Collie met with Dorsey and S.M.'s mother at their apartment, where he interviewed Dorsey. During the interview, Dorsey denied sexually abusing S.M. Dorsey was interviewed again at the Luling Police Department. The interviewer, Officer Don Clendennen, testified that when he asked Dorsey if Dorsey put his finger in S.M.'s vagina, Dorsey answered with statements like, "I didn't hurt that girl," or "I wouldn't hurt that girl." Clendennen also testified that Dorsey never referred to S.M. by her name but referred to

4

her only as "the girl" or "that girl" when talking about her in reference to the time before she made the allegations and only as "the bitch" or "that bitch" when talking about her in reference to the time after she made the allegations.

Clendennen further testified that Dorsey's demeanor fluctuated throughout the interview, including times when he was slumped over in the chair with his shoulders drooping, times when he paced back and forth or stood in the corner silently, and times when he was crying or "crying uncontrollably." Clendennen testified that at one point, when Dorsey was "emotionally out of control," Dorsey said, "I went to check on that girl all the time, and it wasn't always a bootie call." Clendennen also testified that during the occasions when Dorsey was crying, he stated several times that he was going to kill himself. Specifically, he made statements to the effect that he would kill himself before he went to jail and that he would kill himself before he would admit that he hurt S.M.

At trial, S.M.'s mother testified for the defense. During cross-examination, she testified that S.M. told her on at least one occasion that Dorsey was sexually abusing her. She testified that the first time S.M. told her of the abuse was in 2008. She testified that she could not remember if or when S.M. told her about the abuse a second time, but she testified that S.M. "never told [her] anything" after S.M. moved out of her and Dorsey's apartment. S.M.'s mother also testified that she was involved in a pending CPS case in which the issue was the termination of her parental rights to S.M. and that one of CPS's criticisms of her was her refusal to discontinue contact with Dorsey.

After hearing all of the evidence, the jury found Dorsey guilty of all three counts alleged in the indictment: aggravated sexual assault of a child (count one), indecency with a child

by contact (count two), and indecency with a child by exposure (count three). At a punishment hearing, Dorsey pled true to four enhancement allegations: burglary of a building, aggravated assault with a deadly weapon, and two convictions for burglary of a habitation. The jury assessed punishment at fifty years' imprisonment and a $10,000 fine for the first count, fifty years' imprisonment and a $10,000 fine for the second count, and twenty years' imprisonment and a $10,000 fine for the third count. This appeal followed.

## DISCUSSION

Dorsey raises two issues on appeal, arguing that the trial court erred in: (1) allowing Rebekah Young to testify as an outcry witness, and (2) allowing Melissa Rodriguez to testify as an outcry witness. Out-of-court hearsay testimony like that offered by Young and Rodriguez is admissible from the first adult to whom a child makes a discernible outcry regarding sexual or physical abuse. *See* Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 2009); *In re Z.L.B.*, 102 S.W.3d 120, 121 (Tex. 2003); *Hernandez v. State*, 973 S.W.2d 787, 789 (Tex. App.—Austin 1998, pet. ref'd). Because outcry witnesses are event-specific, the hearsay exception permits testimony of multiple outcries if they regard "discrete occurrences" or "discrete events" of abuse and are not merely a repetition of the same event told to different individuals. *See Brown v. State*, 189 S.W.3d 382, 387 (Tex. App.—Texarkana 2006, pet. ref'd); *Hernandez*, 973 S.W.2d at 789.

We review the admission of outcry-witness testimony under an abuse-of-discretion standard. *Garcia v. State*, 792 S.W.2d 88, 91-92 (Tex. Crim. App. 1990); *Hernandez*, 973 S.W.2d at 789. If the trial court improperly admitted the testimony of Young or Rodriguez, we must decide

whether the error was reversible error in the context of all the evidence presented.  Tex. R. App.

P. 44.2(b); *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

***First Outcry Witness: Young***

Dorsey contends that the trial court erred in allowing Young to testify as an outcry

witness because:  (1) the State did not show that Young was the first person, eighteen years of age

or older, to whom S.M. made a statement describing the alleged abuse; (2) the State failed to provide

Dorsey with notice that Young was to be an outcry witness; and (3) the trial court failed to conduct

a reliability hearing before admitting the testimony.  We address each argument separately.

**A.      Whether Proper Outcry Witness**

Dorsey asserts that the trial court should not have allowed Young to testify as an

outcry witness because M.G., a friend of S.M., was the first person S.M. spoke to about the abuse.

The State contends that M.G. was not a proper outcry witness because she was a minor.  In support

of Dorsey's argument, he cites *Long v. State*, 800 S.W.2d 545 (Tex. Crim. App. 1990), and argues

that the State, as the proponent of the evidence, bore the burden of showing that Young was the first

adult to whom S.M. described the abuse.  Dorsey further argues that the State did not carry its burden

because it did not rule out the possibility that M.G. was an adult and that she was the first adult to

whom S.M. described the abuse.

However, *Long* is distinguishable from this case.  In *Long*, the prosecutor called the

victim's mother to testify regarding statements the victim made to the mother about sexual abuse.

*See id*. at 546.  The defense objected to the mother's testimony on the basis that it was hearsay.  *Id*.

7

The court of criminal appeals held that once the defendant objected on hearsay grounds, the State then bore the burden of showing that the testimony was admissible pursuant to article 38.072 or some other exception to the hearsay rule. *Id*. at 548. Here, Dorsey did not object to Young's testimony. Although Dorsey contends in his brief that he "disputed that Young was a proper outcry witness," he points only to his objection to the testimony of Rodriguez, not the testimony of Young. The objection that Dorsey references in his brief is contained in the record in the following exchange among the parties and the trial court:

| Defense: | Well, first, I am going to object to [Rodriguez] testifying as an outcry witness because she's not the first outcry witness. She's not even the second outcry witness. |
|---|---|
| Court: | Well, who's the first outcry witness? |
| Defense: | Well, that's a good question. Maybe it's [M.G.] that nobody can find. |
| Court: | Well, that's a child, so that's irrelevant. |
| State: | Exactly. |
| Court: | That doesn't have anything to do with this. |
| Defense: | And then Rebekah Young. |

Dorsey's failure to object to Young's testimony as hearsay distinguishes this case from *Long*, which placed the burden on the State to show the applicability of a hearsay exception only after the defendant had objected that the testimony was hearsay.[4] Accordingly, *Long*, and the burden that *Long* places on the State, do not apply to this case.

---

[4] Dorsey's failure to object to Young's testimony also means that he has waived error on this issue. *See* Tex. R. App. P. 33.1.

8

Further, once the State laid the proper predicate that Young was the outcry witness, Dorsey bore the burden to rebut the predicate by introducing evidence showing that S.M. had made a sufficient outcry to M.G. and that M.G. was more than eighteen years old at the time the statement was made. *See Z.L.B.*, 102 S.W.3d at 122 (citing *Garcia*, 792 S.W.2d at 93). Although there is evidence in the record showing that M.G. may have been one of the first people who S.M. told about the sexual abuse—specifically, S.M. testified that she told her mother, M.G., and M.G.'s grandmother about the abuse but did not specify an order in which she told them or the dates on which she told them—there is no evidence in the record describing the contents of S.M.'s statement to M.G. In order for M.G. to be the proper outcry witness, there must be evidence of the specific details of the statement that S.M. made to M.G. showing that the statement was more than a general allusion or allegation that something in the area of child abuse was occurring. *See Garcia*, 792 S.W.2d at 91. There are no such details in this case. Dorsey did not call M.G. to testify as to the details and timing of S.M.'s statement, nor did he elicit testimony from S.M. regarding the specifics of her statement to M.G.[5] *See id*. at 91-92.

There is also no evidence in the record that M.G. was more than eighteen years old at the time that S.M. told her about the abuse. To the contrary, the record contains several references implying that M.G. was a minor at the time S.M. made the statement, including the portion of the record quoted above in which the trial court stated that M.G. was not a proper outcry witness because

---

[5] For the same reason that M.G. was not the proper outcry witness, S.M.'s mother and M.G.'s grandmother were not the proper outcry witnesses. The record does not contain any specific details of the statements that S.M. made to her mother or M.G.'s grandmother. *See Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). Although S.M.'s mother testified that S.M. told her about the abuse, she did not provide a description of S.M.'s statements.

she was a child, and Dorsey's attorney did not disagree with the court's statement. Thus, the record does not support Dorsey's argument.

### B.    Notice

Dorsey also argues that the State failed to provide notice that it intended to offer Young as an outcry witness as required by article 38.072 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b) (party intending to offer outcry witness testimony required to provide notice, name of witness, and summary of statement to opposing party within fourteen days of trial). However, as we have previously stated, Dorsey did not object to Young's testimony at trial, and he has therefore waived error on appeal. *See* Tex. R. App. P. 33.1. Even if he had not waived error, he is incorrect in stating that the State did not provide him with notice of Young's impending testimony. Although the notice was not included in the initial clerk's record that was filed with this Court on appeal, the notice is contained in a later-filed supplemental clerk's record. As required by article 38.072, the record indicates that the notice was filed in the trial court in July 2009, approximately three months before trial. Also as required by article 38.072, the notice indicated that the State intended to offer Young's testimony as an outcry witness and provided a written summary of Young's statement. We therefore conclude that the State provided proper notice of Young's impending outcry testimony to Dorsey.

### C.    Reliability Hearing

Dorsey also asserts that the trial court should not have admitted Young's outcry testimony because the trial court did not conduct a hearing to determine whether the testimony was

10

reliable based on the time, content, and circumstances of the statement, as required by article 38.072. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(2). The State concedes that the trial court did not conduct a reliability hearing. Once again, however, Dorsey has waived error on this issue by having failed to object to Young's testimony at trial. *See* Tex. R. App. P. 33.1. Even if he had not waived error, any error resulting from the admission of Young's testimony was rendered harmless when other evidence was admitted describing the same facts. *See Lane v. State*, 151 S.W.3d 188, 192-93 (Tex. Crim. App. 2004); *Long v. State*, 821 S.W.2d 216, 217 (Tex. App.—Houston [14th Dist.] 1991, no pet.). S.M. testified regarding the details of the sexual abuse and further testified that she told Young about the abuse. Dorsey did not object to the testimony. Because the same facts were admitted through S.M.'s testimony without objection, any error in the admission of Young's outcry testimony was harmless. *See Lane*, 151 S.W.3d at 192-93; *Long*, 821 S.W.2d at 217.

### D. Conclusion Regarding First Outcry Witness

Given our rejection of each of Dorsey's arguments with respect to the outcry testimony of Young, we overrule Dorsey's first issue.[6]

***Second Outcry Witness: Rodriguez***

Dorsey contends that the trial court erred in allowing Melissa Rodriguez to testify as an outcry witness because: (1) the State did not show that Rodriguez was the first person, eighteen years of age or older, to whom S.M. made a statement describing the alleged abuse; (2) the

---

[6] Dorsey characterizes his first issue as "Points of Error One through Three." Thus, by overruling his first issue, we overrule each of his three points of error.

trial court erred in admitting more than one outcry witness; and (3) the trial court failed to conduct a reliability hearing before admitting the testimony. We address each argument separately.

### A. Whether Proper Outcry Witness

Dorsey argues that Rodriguez was not a proper outcry witness because she was not the first person to whom S.M. spoke of the abuse. Specifically, Dorsey asserts that S.M. told her mother, M.G., and Young of the abuse before she told Rodriguez, making Rodriguez the fourth person S.M. spoke to about the abuse. We have already concluded that M.G. and S.M.'s mother were not proper outcry witnesses based on the absence of evidence in the record showing the details of S.M.'s statements to them. *See Garcia*, 792 S.W.2d at 91-92. Accordingly, S.M.'s statements to her mother and M.G. do not render Rodriguez's testimony improper. We address S.M.'s statement to Young in the next section.

### B. Multiple Outcry Witnesses

Although the trial court found that Young was the first adult to whom S.M. made a statement about the abuse, the trial court allowed Rodriguez to testify in addition to Young because the trial court found that Rodriguez was the first adult to whom S.M. had made a statement about a discrete incident of abuse: Dorsey's exposure of his penis. Thus, the trial court allowed Rodriguez to testify only about S.M.'s statement that Dorsey exposed his penis, not S.M.'s other statements—one of which had already been described by Young—about Dorsey inserting his finger into or touching S.M.'s vagina. Dorsey contends that the trial court erred in allowing Rodriguez to testify even for that limited purpose because the incident of exposure was not shown to be a different event from the other incidents of sexual abuse. As noted above, outcry witnesses are event-specific,

12

and the trial court may allow multiple outcry witnesses if the witnesses describe "discrete occurrences" or "discrete events" of abuse. *See Hernandez*, 973 S.W.2d at 789; *Brown*, 189 S.W.3d at 387.

Here, Young testified about S.M.'s statements to her in which S.M. said that Dorsey had told S.M. to change into short shorts and low-cut shirts and had slapped or pinched S.M.'s buttocks. Young also testified that S.M. said that Dorsey had "fingered" her. When the State attempted to elicit testimony from Rodriguez regarding S.M.'s statement to her that Dorsey had shown her his penis, Dorsey objected on the ground that Rodriguez was not the first person S.M. told of the abuse. In response, the State argued that Rodriguez could testify about the allegation of exposure because it was a discrete event of abuse, separate from the other allegations of abuse.

The trial court held a hearing outside the presence of the jury during which Rodriguez testified that S.M. told her that Dorsey pulled his penis out from his basketball shorts and showed it to her. When asked by the prosecutor whether the incident of exposure occurred at a different time than the incident in which Dorsey put his finger into S.M.'s vagina, Rodriguez stated: "I believe it was a different time. One of the incidents—and I can't remember which—one of them she was in the living room with him in their apartment, and the other time she was talking about in the bedroom, her mother's bedroom." When asked by defense counsel whether the incidents occurred on different dates, Rodriguez stated: "We're talking about different scenarios, not dates. But we don't have specific dates. She couldn't give me that. It had happened two years ago, so not a date, but instances, yes. Different abuse scenarios is what we would call them." When the trial court then asked Rodriguez whether the incident of exposure occurred at a separate time from the other incidents of abuse, Rodriguez stated: "[S.M.]—the description that she gave was that she was in

13

different rooms. Were they different days? It might have been in the interview. I am not really sure. I reviewed it yesterday, but I've done so many that sometimes they bleed over." Also during the hearing, the State pointed out, and the record shows, that the incident of exposure was one of three separate criminal acts that was alleged in the indictment. At the close of the hearing, the trial court ruled that it would allow Rodriguez to testify as to S.M.'s statement about the incident of exposure but not as to any other incidents of abuse.

Dorsey asserts that the statement about Dorsey's exposure of his penis was simply a more detailed description of an event that had already been described to Young. However, Young's testimony made no mention of an event in which Dorsey exposed his penis. Further, the record shows that, at the very least, the incident of exposure occurred in a different room than the other incidents. Given the evidence in the record as adduced in a hearing held outside the presence of the jury, and given that the exposure offense was separately indicted, we conclude that the trial court did not abuse its discretion in determining that each type of abuse constituted a discrete event. *See Tear v. State*, 74 S.W.3d 555, 559 (Tex. App.—Dallas 2002, pet. ref'd) (second outcry witness could testify as to victim's statement about defendant putting victim's penis in defendant's mouth because first outcry witness testified only as to victim's statement about defendant putting fingers in victim's buttocks); *Turner v. State*, 924 S.W.2d 180, 183 (Tex. App.—Eastland 1996, pet. ref'd) (second outcry witness could testify as to victim's statement about penile penetration because first outcry witness testified only as to victim's statement about digital penetration).

Because Rodriguez testified only about an occurrence of abuse that was distinct from the other occurrences of abuse, the trial court did not abuse its discretion in allowing Rodriguez to testify as an outcry witness about the alleged incident of exposure.

14

### C.    Reliability Hearing

Dorsey also asserts that the trial court should not have admitted Rodriguez's outcry testimony because the trial court did not conduct a reliability hearing. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(2). Although the State concedes that the trial court did not conduct a reliability hearing, Dorsey still does not prevail on this argument for the same reasons he did not prevail on the argument with regard to Young. First, Dorsey did not object at trial to the trial court's failure to conduct a reliability hearing and has therefore waived error on appeal. *See* Tex. R. App. P. 33.1. Second, even if he had not waived error, any error resulting from the admission of Rodriguez's testimony was rendered harmless when other evidence was admitted describing the same facts. *See Lane*, 151 S.W.3d at 192-93; *Long*, 821 S.W.2d at 217. S.M. testified regarding the details of the sexual abuse and further testified that she told Rodriguez about the abuse. Dorsey did not object to the testimony. Because the same facts were admitted through S.M.'s testimony without objection, any error in the admission of Rodriguez's outcry testimony was harmless. *See Lane*, 151 S.W.3d at 192-93; *Long*, 821 S.W.2d at 217.

### D.    Conclusion Regarding Second Outcry Witness

Because we have rejected each of Dorsey's arguments with respect to the outcry testimony of Rodriguez, we overrule Dorsey's second issue.[7]

---

[7] Dorsey characterizes his second issue as "Points of Error Four through Six." Thus, by overruling his second issue, we overrule each of his three points of error.

15

## CONCLUSION

Because we find no error in the trial court's determinations, we affirm the trial court's judgments.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Patterson and Henson

Affirmed

Filed:   September 30, 2010

Do Not Publish

16