# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00655-CR

**Andrew Charles Gibson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 403RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-18-904052, THE HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## O P I N I O N

A jury convicted appellant Andrew Charles Gibson of the offense of aggravated sexual assault of a child. *See* Tex. Penal Code § 22.021(a)(1)(B)(ii), (2)(B). Following a jury trial and a punishment hearing at which Gibson pleaded true to three prior felony convictions for sex offenses committed in other states, the district court found that Gibson was a habitual offender and sentenced him to life imprisonment without parole. *See id*. § 12.42(c)(4)(B). In a single point of error on appeal, Gibson asserts that the district court abused its discretion in allowing multiple individuals to testify as outcry witnesses. We will affirm the district court's judgment.

## BACKGROUND

Gibson was charged in a four-count indictment with the offenses of aggravated sexual assault of a child (Counts 1 and 2), indecency with a child by contact (Count 3), and

indecency with a child by exposure (Count 4), all arising out of a single incident. The victim in the case was F.M. (the child), who was four years old at the time of the incident. The child lived with her mother, A.M. (the mother); her great-aunt, Joan Workman; Joan's adult son, Chris Workman; and Joan's husband, Gibson. The child referred to Gibson as "Uncle Andy."

At trial, the jury heard evidence that on January 8, 2017, the mother was working in the kitchen when the child told her that "she didn't want to suck Uncle Andy's stick anymore." The mother testified that she initially thought that the child was referring to "some kind of pixie stick" and asked the child if "the stick" was candy. According to the mother, the child told her, "[N]o, it's his thingy where the magic juice comes out." At that point, Chris came into the kitchen and the mother told him what the child had told her.

Chris, who had worked for Child Protective Services, asked the mother if she wanted him to talk to the child. The mother indicated that she did, and Chris proceeded to ask the child, in the mother's presence, about "the stick." The mother testified that Chris asked the child whether she was referring to "a stick that we can throw away." The child told Chris, "[N]o, no, it's his thingy, it's his front butt." At that point, Chris and the mother stopped talking to the child. Gibson then came into the kitchen and wanted to take the child outside, but the mother told the child to stay inside where the mother could see her.

Joan, who had been in her bedroom, later came out and was told by the mother and Chris what the child had said. The mother testified that Joan then "pointblank asked [the child] if Uncle Andy put his stick in her mouth and she had said yes." Joan, who did not testify as to what she heard the child say but testified as to the child's demeanor, explained that the child's tone was "mostly matter of fact," and the child did not sound as if she had been coached or was reciting memorized lines.

2

Chris also testified as to what the child told him, and his testimony was similar to that of the mother. Chris testified that he first asked the child to find "the stick" so that they could "throw it away." The child told Chris that they could not do so because the stick belonged to "Uncle Andy." When Chris asked the child to identify the location of the stick, she told him that it was "on her front butt." Chris then asked the child to identify the location of her "front butt," and "she pointed to her groin." The next day, the mother and Chris went to the police station and reported what the child had told them.

Krista Wold, a forensic interviewer with the Center for Child Protection in Travis County, interviewed the child. Wold testified that when she asked the child to "tell [her] about Uncle Andy," the child responded, "He always wants me to suck his thing." The child also told Wold that this happened "seven days times,"[1] that it happened "at home in Uncle Andy's room in a chair that's black and has wheels and is by his computer," that "she was standing and that he was sitting" when it happened, and "[t]hat he keeps it a secret." The child also told Wold that Gibson's "thing" went inside her mouth, that "magic juice" came out of Gibson's "thing," and that the "magic juice" went "into [her] body" and "to [her] bones." Because the child had used the word "thingy" to describe Gibson's penis, Wold showed the child an anatomical male doll and asked her if she could identify where the "thingy" was located. According to Wold, the child "ended up taking off the pants and then the underwear from the doll and then pointing to the penis on the male doll." Wold's interview of the child was recorded, and a copy of the recording was admitted into evidence without objection.

---

[1] The record does not reflect what the child meant by this. During the interview, Wold initially heard the child say "seven days," but the child corrected her and said "seven days times."

3

The child, who was six years old at the time of trial, also testified in court. The child testified that she liked "Uncle Andy" "until he played a game" with her and "[t]he thing came." When asked if Gibson had ever done anything to her that she did not like, the child testified, "Yes. One single thing." When asked to describe what that thing was, the child testified, "His penis, the thing."

During her testimony, the child drew a picture of herself "hiding" from Gibson under his desk. When asked why she was "hiding from Uncle Andy," the child testified, "Because I didn't want him to do that." When asked to explain what she did not want Gibson to do, the child testified, "Making me suck his penis." When asked if someone told her to say that or if it "really happened," the child testified, "It's what really happened. Really. Really. Really. Really."

Other evidence admitted at trial included an earlier drawing by the child, similar to the one that the child drew during her testimony. The prosecutor explained that the child had drawn this picture when the prosecutor had first discussed the incident with her. The drawing, which was admitted without objection, included a male stick figure that appeared to have an erect penis and was standing next to the child, in front of a desk. During her testimony, the child identified the male figure in the drawing as "Uncle Andy." Also admitted into evidence was a recorded jail call between Gibson and Joan that was made following Gibson's arrest. In the call, Gibson complained that the charges against him made it appear that he was violent with the child or that he had "forced" her to do things. In response, Joan told Gibson, "Of course she was forced into it. Children can't give consent."

4

The jury convicted Gibson of aggravated sexual assault of a child as alleged in Count 1 of the indictment.[2] Gibson filed a motion for new trial that was overruled by operation of law. This appeal followed.

## STANDARD OF REVIEW

We review a trial court's admission of testimony from an outcry witness under an abuse-of-discretion standard. *See Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Buentello v. State*, 512 S.W.3d 508, 516–17 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). A trial court has "broad discretion" in determining who qualifies as a proper outcry witness, and we will uphold the trial court's ruling if it is reasonably supported by the record and within the zone of reasonable disagreement. *See Garcia*, 792 S.W.2d at 92; *Buentello*, 512 S.W.3d at 516–17.

## ANALYSIS

At the hearing on the admissibility of outcry testimony, the State argued that the mother, Chris Workman, and Krista Wold all qualified as outcry witnesses because the child made "partial outcries" to the mother and Workman and a "more complete outcry" to Wold. Gibson objected, arguing that the proper outcry witness was the first person to whom the child described the offense in a discernible manner, which Gibson asserted was the mother. The district court overruled Gibson's objection and allowed all three individuals to testify as outcry witnesses. The district court provided the following explanation for its ruling:

> In this instance, we've got four counts and each of the outcry witnesses that have testified here this morning at least allude to different parts of the indictment as far as different counts, as far as giving outcries as to what has occurred, so I am going

---

[2] Counts 2, 3, and 4 of the indictment were charged as alternatives to Count 1 and thus the jury made no findings as to those counts.

to overrule the objection and allow each to testify to their specific observations and relative to what we entertained here this morning. So that is my ruling as far as the outcry is concerned.

In his sole point of error on appeal, Gibson argues that the district court abused its discretion in allowing multiple individuals to testify as outcry witnesses to the child's statements. Specifically, Gibson asserts that the mother was the proper outcry witness, while Chris Workman and Wold were improper.[3]

"Hearsay statements, while generally inadmissible, may be admitted under specific conditions when public policy supports their use, and the circumstances surrounding the making of those statements pedigree their reliability." *Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005). Article 38.072 of the Texas Code of Criminal Procedure, also known as the outcry statute, creates a hearsay exception in the prosecution of certain sexual offenses committed against children for the admission of a child's first outcry of sexual abuse to an adult. *See* Tex. Code Crim. Proc. art. 38.072; *Bays v. State*, 396 S.W.3d 580, 581 n.1 (Tex. Crim. App. 2013). "Because it is often traumatic for children to testify in a courtroom setting, especially about sexual offenses committed against them, the Legislature enacted Article 38.072 to admit

---

[3] The State asserts in its brief that Gibson did not preserve error on this point because his complaint in the district court was not sufficiently specific. However, all that is required to preserve a complaint for appellate review is for the record to show that the objection "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." *See* Tex. R. App. P. 33.1(a)(1). Here, the record reflects that Gibson argued at the hearing that the only proper outcry witness was the mother because she was the first person to whom the child described the offense in a discernible manner. We conclude that this was sufficient to preserve error as to the district court's decision to allow additional outcry witnesses to testify. *See Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) ("As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.")

the testimony of the first adult a child confides in regarding the abuse." *Martinez*, 178 S.W.3d at 810–11. "This witness may recite the child's out-of-court statements concerning the offense, and that testimony is substantive evidence of the crime." *Id.* at 811.

To be admissible under Article 38.072, among other requirements, "[t]he statement must be 'more than words which give a general allusion that something in the area of child abuse is going on'; it must be made in some discernible manner and is event-specific rather than person-specific." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (quoting *Garcia*, 792 S.W.2d at 91). Thus, "[t]here may be only one outcry witness per event." *Id.* "Hearsay testimony from more than one outcry witness may be admissible under article 38.072 only if the witnesses testify about different events." *Id.*; *see Hernandez v. State*, 973 S.W.2d 787, 789 (Tex. App.—Austin 1998, pet. ref'd).

In this case, the mother, Workman, and Wold all testified to the child's statements concerning a single event—the child "sucking" Gibson's "thing." The State did not allege that this occurred on multiple occasions or that Gibson had committed additional sexual offenses against the child on other occasions. Although the indictment contained four counts, each count was alleged in the alternative and concerned the same event that occurred "on or about August 1, 2016." Counts 1 and 2 alleged alternate ways in which Gibson had sexually assaulted the child on that date, while Counts 3 and 4 alleged lesser-included offenses of the sexual assault.[4] Accordingly, only one outcry witness should have testified to the child's statements, and the

---

[4] Count 1 alleged that Gibson caused the penetration of the child's mouth with his sexual organ. Count 2 alleged that Gibson caused the child's mouth to contact his sexual organ. Count 3 alleged that Gibson touched the child with his genitals. Count 4 alleged that Gibson exposed his genitals to the child.

district court abused its discretion in allowing multiple witnesses to testify to those statements. *See Brown v. State*, 189 S.W.3d 382, 387 (Tex. App.—Texarkana 2006, pet. ref'd).

We must next determine if Gibson was harmed by this error. "The erroneous admission of evidence is non-constitutional error." *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018) (citing *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008)). "Non-constitutional errors are harmful, and thus require reversal, only if they affect Appellant's substantial rights." *Id*. (citing Tex. R. App. P. 44.2(b)). The Court of Criminal Appeals has construed this to mean that "an error is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict." *Id*. (citing *Taylor*, 268 S.W.3d at 592). "If we have a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect, we will not overturn the conviction." *Id*.

In cases involving the improper admission of outcry testimony, the error is harmless when the victim testifies in court to the same or similar statements that were improperly admitted or other evidence setting forth the same facts is admitted without objection. *See, e.g.*, *Allen v. State*, 436 S.W.3d 815, 822 (Tex. App.—Texarkana 2014, pet. ref'd); *Zarco v. State*, 210 S.W.3d 816, 833 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *see also Foster v. State,* No. 01-18-00006-CR, 2019 Tex. App. LEXIS 2967, at *12–13 (Tex. App.—Houston [1st Dist.] Apr. 11, 2019, pet. ref'd) (mem. op., not designated for publication); *Garcia v. State*, No. 03-14-00269-CR, 2016 Tex. App. LEXIS 4219, at *11 (Tex. App.—Austin Apr. 22, 2016, pet. ref'd) (mem. op., not designated for publication). Here, the child testified that Gibson made her "suck his penis" and that it "really happened." The child also testified that she liked Gibson "until he played a game" with her and "[t]he thing came," which the child identified as Gibson's penis.

The State emphasized the child's testimony in its closing argument. Also admitted into evidence during the child's testimony was a drawing made by the child showing a male stick figure, which the child identified as Gibson, standing next to the child with what appeared to be an erect penis. Additionally, a copy of the recording of the child's forensic interview was admitted into evidence without objection. Thus, the jury heard for itself the same statements to which Wold had testified. Other evidence considered by the jury included a jail call between Gibson and his wife in which Gibson denied that he was "violent" with the child or that he "forced" her to do anything, which the jury could have reasonably construed as an admission that Gibson had done something with the child but that he did not view it as non-consensual. On this record, we have fair assurance that the district court's error in admitting the testimony of multiple outcry witnesses did not have a substantial and injurious effect on the jury's verdict.

We overrule Gibson's sole point of error.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed

Filed:   January 29, 2020

Publish

9