Opinion filed May 16, 2013



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00127-CR

_____

## RICHARD McLAY MELVIN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 29th District Court

Palo Pinto County, Texas

Trial Court Cause No. 14188

## M E M O R A N D U M   O P I N I O N

The jury convicted Richard McLay Melvin of the offense of continuous sexual abuse of a young child. Appellant elected to have the trial court assess his punishment, and it assessed his punishment at confinement for ninety-nine years. We affirm.

*Issues on Appeal*

Appellant presents two issues for review. In his first issue, he contends that the testimony of the State's outcry witness was inadmissible hearsay and that, therefore, the trial court erred when it admitted the outcry testimony. In his second issue, appellant challenges the sufficiency of the evidence to support his conviction.

*The Charged Offense*

To obtain a conviction for the offense of continuous sexual abuse of a young child, the State must prove three elements: (1) the defendant "commit[ted] two or more acts of sexual abuse," (2) "during a period that [was] 30 or more days in duration," and (3) "at the time of the commission of each of the acts of sexual abuse, the [defendant was] 17 years of age or older and the victim [was] a child younger than 14 years of age." TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2012); *Brown v. State*, 381 S.W.3d 565, 569 (Tex. App.—Eastland 2012, no pet.).

In this cause, the indictment alleged all the statutory elements of the offense of continuous sexual abuse of a young child. The indictment alleged that Appellant, who was seventeen years of age or older, committed two or more acts of sexual abuse against B.Z.,[1] who was younger than fourteen years of age. The indictment further alleged that the acts of sexual abuse occurred "DURING A PERIOD THAT WAS 30 OR MORE DAYS IN DURATION, TO-WIT: FROM ON OR ABOUT SEPTEMBER 1, 2007 THROUGH ON OR ABOUT JANUARY 4, 2008." The indictment described specific acts of sexual abuse that Appellant allegedly committed, including aggravated sexual assault by causing the penetration of B.Z.'s sexual organ by Appellant's sexual organ. *See* PENAL § 22.021.

---

[1]The child's initials were used in the indictment to protect her identity. Also to protect the identity of the child, we use initials to refer to the child, her mother, and the child's sister.

2

*Sufficiency of the Evidence*

We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under this standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In conducting a sufficiency review, we are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Brooks*, 323 S.W.3d at 899.

The record shows that, during the time period alleged in the indictment, Appellant was about thirty-four years old and B.Z. was twelve years old. T.Z. is B.Z.'s mother. B.Z. has a younger sister, D.Z. T.Z. married appellant in 2000. From February 2006 until January 2008, Appellant, T.Z., B.Z., and D.Z. lived in a house on Sam Houston Street in Mineral Wells. In January 2008, Appellant moved out of the house. T.Z. and Appellant were divorced in October 2008.

B.Z. testified that Appellant started sexually abusing her when she was about six years old. She said that, at that time, she and her family lived in a house at the Country Club Estates. Appellant was a truck driver. B.Z. said that the first incident of abuse occurred when she went with Appellant and his father in the "big truck" on a trip to Columbus, Ohio. B.Z. testified that, while they were on this trip, Appellant "touched [her] like a bad touch." She said that "it happened a lot after that" and that "[i]t got worse as [she] got older." B.Z. said that Appellant's abuse of her consisted of touching until she was in the fourth or fifth grade and

3

that, at that time, he started penetrating her. She said that Appellant usually penetrated her with his penis and sometimes penetrated her with a vibrator. B.Z. explained that, when she said that Appellant penetrated her with his penis, she meant that he put his penis inside of her. The State introduced two vibrators into evidence that belonged to T.Z. B.Z. testified that Appellant penetrated her with one of these vibrators.

B.Z. testified about incidents that occurred during the time period described in the indictment. She said that Appellant penetrated her with his penis around Halloween in 2007, during the Christmas holidays in 2007, and around January 3, 2008. B.Z. said that the January 3 incident occurred right before Appellant moved out of the house and that it was the last incident of abuse. B.Z. said that, from September 2007 until January 2008, Appellant sexually abused her at least ten times and that, during these incidents, Appellant usually penetrated her with his penis.

B.Z. said that she told T.Z. about Appellant's abuse of her in April 2008. She testified that she did not tell T.Z. about the abuse earlier because Appellant told her that T.Z. would not believe her and because B.Z. was scared that Appellant would hurt her family if she told anyone.

T.Z. testified as the outcry witness. T.Z. said that Appellant was employed as a truck driver during their marriage. She said that, during 2006 and 2007, her marriage to Appellant was not going very well and was "pretty rocky." At one point, T.Z. and Appellant separated, but they reconciled in early 2007 because Appellant needed to have shoulder surgery. Around the time that Appellant had surgery, T.Z. went to work for Metro. Her work shift started at 2:00 p.m. and ended at 11:00 or 11:30 p.m. When T.Z. was at work, Appellant stayed home with B.Z. and D.Z.

4

T.Z. testified that the marriage did not improve after Appellant's surgery. She said that Appellant was always tough on B.Z. T.Z. described an incident that occurred on January 5, 2008. She said that, on that occasion, B.Z. said something that made Appellant angry and then Appellant told B.Z. to "Shut the 'F' up" in front of B.Z., D.Z., their friends, and T.Z. The situation escalated and, ultimately, T.Z. told Appellant to get his things from the house and to leave. T.Z. said that Appellant left the house that night. T.Z. testified that she and Appellant talked on the phone in the following months. They were divorced on October 22, 2008.

T.Z. testified that, on April 1, 2008, she was watching her best friend's children. At about 9:00 p.m., T.Z. heard her friend's thirteen-year-old daughter tell B.Z., "You need to tell your mom." T.Z. then asked B.Z., "Tell me what?" In response, B.Z. told T.Z. that Appellant had been doing things to her. T.Z. asked B.Z. what kind of things, and B.Z. said, "He put his thingy in me." T.Z. said that she was outraged when B.Z. told her about the sexual abuse. B.Z. told T.Z. that the first incident of abuse occurred when she had been on a trip with Appellant and his father. T.Z. said that this trip occurred in the summer of 2001. B.Z. told T.Z. that Appellant put his penis in her vagina and that Appellant sexually abused her "[p]robably about 50" times over the years. T.Z. said that she asked B.Z. if she knew what happened when boys finished having sex. B.Z. told T.Z. that she knew. T.Z. asked B.Z., "[W]hat would [Appellant] do with that?" B.Z. responded, "Sometimes it would be inside [her], and sometimes he would put it on [her] stomach." B.Z. told T.Z. that Appellant put his face in her private area. B.Z. also told T.Z. that Appellant sometimes put his shotgun on the bed beside them when Appellant sexually abused her.

T.Z. testified that B.Z. told her that the last incident of abuse occurred the night that T.Z. had gone to see a friend whose dog had died. T.Z. said that the date she went to see her friend was January 4, 2008. B.Z. told T.Z. that the incidents of

abuse occurred when T.Z. was not at home. B.Z. told T.Z. that she did not tell her about the abuse earlier because Appellant told her that T.Z. would not believe her and because Appellant threatened to harm T.Z. and D.Z. if she told anyone.

T.Z. testified that she asked B.Z. whether Appellant said anything to her when he abused her. B.Z. said that Appellant sometimes said that "[t]hat was nice," "[t]hat was good," or that he was going to B.Z. because T.Z. would not have sex with him.

The next morning, T.Z. took B.Z. to the Mineral Wells police station to report that Appellant had been raping B.Z. T.Z. made the initial report to Corporal Adam Davis. Corporal Davis informed Detective Brian Boetz that T.Z. and B.Z. had made the report. Detective Boetz and Detective Darby Thomas conducted an investigation in this case. They scheduled B.Z. for a forensic interview with a Child Protective Services investigator and also for an examination at Cook Children's Medical Center in Fort Worth. B.Z. gave a forensic interview, and the detectives observed it. Detective Thomas interviewed T.Z. and obtained a statement from her. Detective Thomas obtained a warrant for Appellant's arrest on April 9, 2008. Appellant was arrested in Andrews, Texas, on that same day. The following day, Detective Thomas and Detective Boetz transported Appellant from Andrews to Mineral Wells.

Donna Ann Wright is a pediatric nurse practitioner at Cook Children's Medical Center. Wright examined B.Z. on April 10, 2008. Wright testified that B.Z. was referred to the hospital's Child Advocacy Resource and Evaluation team for medical concerns related to a possible sexual assault. During the evaluation, B.Z. said that Appellant had sexually abused her since she was in kindergarten or first grade. B.Z. told Wright that "[she] was being raped by [her] stepdad"; that "[Appellant] went inside [her] with his penis, [her] vagina"; and that, "[a]t first, [Appellant] just rubbed it on there." In response to questions by Wright, B.Z. said

6

that Appellant put his penis into her vagina, that Appellant put his finger into her vagina, that Appellant put a metal vibrator inside her vagina, that Appellant put his mouth on her vagina, that Appellant rubbed her vagina, and that Appellant made her rub on his penis. Wright asked B.Z. whether anything came out of Appellant's penis. B.Z. responded, "[Y]es, [and] that it was in her vagina."

B.Z. also told Wright that she had consensual sex with a thirteen-year-old boy when she was twelve years old. Wright testified that twelve-year-old girls generally are not sexually active. However, she said that it is not uncommon for twelve-year-old victims of sexual abuse by adults to engage in sexual activity outside of the abusive relationship.

Wright testified that B.Z.'s examination revealed that she had a healed transection to the hymenal opening, which meant that, at some point, B.Z. had had a tear to the opening of her vagina. Wright described the healed injury as "a complete tear through the hymen to the base of the vagina." She said that the injury had to have been caused by some type of penetration. Wright said that there was no way to determine when the injury occurred. She explained that genital tissue heals very, very quickly. Wright testified that her final diagnosis was "sexual abuse, healed transection to the hymen at 5:00 o'clock, unable to date the injury, and no anal trauma."

On April 11, 2008, Detective Boetz and Detective Thomas interviewed Appellant. Detective Boetz advised Appellant of his rights. Appellant waived his rights and voluntarily gave an interview. The detectives electronically recorded the interview. The State introduced a copy of the interview into evidence. During the interview, Appellant brought up the subject of vibrators. He told the detectives that, when B.Z. was nine or ten years old, she found T.Z.'s vibrators. Appellant said that B.Z. asked him what the vibrators were and that, in response, he told her what they were and how to use them. He told B.Z. that vibrators were used for

7

sexual pleasure. Appellant told the detectives that B.Z. put a vibrator into her vagina, that he watched and became sexually aroused, that he masturbated in front of B.Z., and that he ejaculated. Appellant said that he may have "accidentally gotten some of it" on B.Z. Appellant told the detectives that he masturbated while B.Z. used a vibrator on five to ten occasions.

On April 14, 2008, Detective Thomas retrieved the vibrators from T.Z. at her house on Sam Houston Street. These vibrators were introduced into evidence.

Appellant testified that, during his interview with the detectives, he did not tell the truth when he told them about the incidents that involved B.Z.'s use of a vibrator. Appellant testified that the incidents did not occur. According to Appellant, he understood his rights, including his right to remain silent, but he did not understand how to utilize his rights. He said that he told the detectives the story about the vibrators because "[he] had already told [himself] that [he] wasn't going to stay in a room with two detectives for seven to eight hours trying to be whittled down and drained down." Thus, Appellant said that he decided to admit to the detectives that he committed serious crimes against B.Z. so that he could avoid a long interview. Appellant said that he told the detectives what they wanted to hear and was, therefore, able to finish the interview in about ten minutes.

During his testimony, Appellant denied that he committed any acts of sexual abuse against B.Z. He said that he never had sexual contact with B.Z. He denied all of the charges alleged in the indictment.

In summary, B.Z. testified that Appellant put his penis inside her on multiple occasions during the time period alleged in the indictment. She said that Appellant sexually abused her at least ten times from September 2007 to January 2008 and that the incidents of abuse usually involved Appellant penetrating her with his penis. Specifically, she said that Appellant penetrated her with his penis around Halloween in 2007, during the Christmas holidays in 2007, and around January 3,

2008. B.Z. said that the last incident occurred right before Appellant moved out of the house. T.Z. testified that Appellant left the house on January 5, 2008. T.Z. testified that B.Z. told her that Appellant put his penis in her vagina. Wright testified that B.Z. told her that Appellant penetrated her vagina with his penis. B.Z. described to T.Z. and to Wright the long pattern of sexual abuse committed by Appellant. Contrary to his statements to the detectives in his interview, Appellant testified that he did not have any sexual contact with B.Z.

As the sole judge of the credibility of the witnesses, the jury was free to believe B.Z.'s, T.Z.'s, and Wright's testimony and to disbelieve Appellant's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Polk*, 337 S.W.3d at 289. In arguing his sufficiency issue, Appellant relies on a lack of evidence that B.Z. experienced pain during the sexual penetration and that B.Z. experienced physical or emotional symptoms as a result of the sexual abuse. Appellant's argument raises the issue of B.Z.'s credibility. He essentially asks us to conclude that B.Z. was not credible even though the jury found her credible. An appellate court, however, may not reevaluate the weight and credibility of the record evidence and thereby substitute its judgment for that of the jury. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Viewing all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. Therefore, the evidence is sufficient to support Appellant's conviction for continuous sexual abuse of a young child. Appellant's second issue is overruled.

*Outcry Witness Issue*

In his first issue, Appellant contends that T.Z.'s outcry testimony was inadmissible hearsay. Article 38.072 of the Texas Code of Criminal Procedure permits outcry statements by certain victims of child abuse to be admitted during trial, despite the hearsay rule, if the provisions of that article are met. *See* TEX.

9

CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2012); *Michell v. State*, 381 S.W.3d 554, 558 (Tex. App.—Eastland 2012, no pet.). The proper outcry witness is the first person, eighteen years old or older, to whom the victim made a statement about the offense. CRIM. PROC. art. 38.072, § 2(a)(3); *Sanchez v. State*, 354 S.W.3d 476, 479 n.1 (Tex. Crim. App. 2011). To qualify as an outcry statement, the child's statement must describe the alleged offense in some discernible manner and must amount to "more than words which give a general allusion that something in the area of child abuse was going on." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990); *Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd).

Under Article 38.072, a hearsay statement is admissible if (1) the State provides timely notice to the defendant of its intention to introduce an outcry statement; (2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and (3) the child testifies or is available to testify at trial. CRIM. PROC. art. 38.072, § 2(b). A trial court has broad discretion to determine the admissibility of outcry evidence, and we will not disturb its determination absent a showing in the record that the trial court clearly abused its discretion. *Garcia*, 792 S.W.2d at 92; *Smith v. State*, 131 S.W.3d 928, 921 (Tex. App.—Eastland 2004, pet. ref'd).

In this case, the State provided Appellant timely notice, as required by Article 38.072, of its intent to use T.Z. as the outcry witness. The trial court conducted a hearing to determine the reliability of B.Z.'s statements to T.Z. The only issue for determination at an Article 38.072 hearing is whether, based on the time, content, and circumstances of the outcry statement, the statement is reliable. *Sanchez*, 354 S.W.3d at 478, 487–88. In *Sanchez*, the Court of Criminal Appeals explained that "[Article 38.072] charges the trial court with determining the

reliability based on 'the time, content, and circumstances of the statement'; it does not charge the trial court with determining the reliability of the statement based on the credibility of the outcry witness." *Id.* at 487–88. Thus, the credibility of the outcry witness is not a relevant issue at a hearing to determine admissibility of an outcry statement. *Id.* at 488.

In this case, the trial court found that B.Z.'s outcry statement to T.Z. "[was] reliable based on time, content, and circumstances" and that the State satisfied the other requirements of Article 38.072 for admissibility of the outcry statement. Therefore, the trial court admitted T.Z.'s outcry testimony.

Appellant contends that, based on T.Z.'s testimony, B.Z.'s outcry statement to T.Z. "only created a general allusion of sexual abuse" and that, therefore, the statement was unreliable. Appellant relies on *Garcia* to support his contention. In *Garcia*, a child made statements about abuse to her teacher and, later, to a Texas Department of Human Services employee. 792 S.W.2d at 89–90. The State designated the Department employee as the outcry witness. *Id.* at 90. The trial court held an Article 38.072 hearing. At the hearing, the Department employee testified in detail about the child's description to him of the alleged offense. *Id.* The trial court ruled that the Department employee was the proper outcry witness. *Id.* On appeal, the defendant asserted that the child's teacher was the proper outcry witness because she was the first person eighteen years or older to whom the child made a statement about the offense. *Id.*

In *Garcia*, the record showed "that the [child] told her teacher that something happened at home, and that it had to do with child abuse." *Id.* at 91. The child testified that she told her teacher "what happened." *Id.* at 90. However, the record did not contain evidence as to any specific details of the statements that the child made to her teacher or as to any description of the alleged offenses that the child told her teacher. *Id.* at 91. The Court of Criminal Appeals explained that

11

the child's general statements about abuse to her teacher "apparently did not, in context, and in the trial court's view, amount to more than the general allusion" that something in the area of child abuse happened. *Id.* Thus, the statements did not describe an alleged offense in a discernible manner. The Court of Criminal Appeals emphasized that, from the record, it could not determine "what it was the complainant told her teacher." *Id.* Therefore, the court held that the trial court had not abused its discretion when it determined that the Department employee was the proper outcry witness. *Id.* at 92.

This case is distinguishable from *Garcia*. In this case, T.Z. testified at the Article 38.072 hearing. T.Z.'s trial testimony, which we have summarized above, was substantially similar to her earlier testimony at the Article 38.072 hearing. At the hearing, T.Z. testified that she was the first person eighteen years old or older to whom B.Z. made statements about Appellant's sexual abuse. T.Z. also testified that B.Z. told her, among other things, that "[Appellant] put his thingy in [her]," that Appellant put his face in her private area, that Appellant put his penis in her vagina, that Appellant ejaculated inside her, that Appellant sometimes ejaculated on her stomach, and that Appellant sexually abused her about fifty times over the years. Thus, T.Z.'s testimony supports the conclusion that B.Z. told her about specific acts of penetration. B.Z.'s statements to T.Z. described the offense in a discernible manner and created significantly more than a general allusion that something in the area of sexual abuse occurred. We conclude that the trial court did not abuse its discretion when it admitted T.Z.'s outcry testimony. Appellant's first issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.

TERRY McCALL

JUSTICE

May 16, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.