**Opinion filed February 6, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00113-CR
_____

## JEREMY PAUL PAZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 358th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR38102**

### M E M O R A N D U M   O P I N I O N

Jeremy Paul Paz appeals his three separate convictions for indecency with a child. *See* TEX. PENAL CODE ANN. § 21.11 (West 2011). The jury assessed punishment at confinement for eight years and a $2,000 fine each on Counts I and III. On Count II, the jury assessed punishment at confinement for four years and a

$1,500 fine. The trial court sentenced Appellant and ordered the sentences in Counts II and III to run consecutively to the sentence in Count I. Appellant challenges the sufficiency of the evidence. Appellant also contends his trial counsel was ineffective because trial counsel failed to object to the State's closing argument in the competency trial and failed to object to the testimony of the State's second outcry witness. We affirm.

## I. *Evidence at Trial*

The grand jury indicted Appellant for three counts of indecency with a child. Counts I and III both alleged that Appellant, with the intent to arouse and gratify his sexual desire, touched his minor daughter's body with his genitals. Count II alleged that Appellant, with the intent to arouse and gratify his sexual desire, touched the breast of his minor daughter.

Appellant, through his counsel, claimed he was incompetent to stand trial and moved for a competency evaluation. The trial court ordered Appellant to undergo examination by Cody Wallace, a mental health professional at the Permian Basin Community Centers for Mental Health & Mental Retardation (Permian Basin MHMR). Wallace evaluated Appellant, found him competent to stand trial, and provided the court with a report. Appellant's attorney objected to Wallace's determination and requested a trial on Appellant's competency.

At the competency trial, Ravi Medi, M.D. testified that he had performed a psychiatric exam on Appellant and had found him competent to stand trial. Dr. Medi noted that his determination was based solely on his meeting with Appellant because he could not review Appellant's past medical records.[1]

---

[1]Appellant is a veteran of the United States Army, and his past medical records are in the custody of the Office of Veteran's Affairs. Appellant's trial attorney stated that he was unable to obtain the records for Dr. Medi to review because the federal government denied his subpoena for the records.

Dr. Medi stated that Appellant understood the charges against him and the roles of the parties involved. Although Dr. Medi diagnosed Appellant with major depression and post-traumatic stress disorder, Dr. Medi testified that Appellant had a functioning level in the normal range and that his medication should not affect his ability to participate at trial.

Wallace testified as to his earlier evaluation of Appellant and reiterated his belief that Appellant was competent to stand trial. Wallace acknowledged that Appellant often had difficulty articulating his thoughts, but he ultimately concluded that Appellant understood the roles of the parties involved and the consequences of being convicted of the offenses with which he was charged.

In its closing argument, the State suggested that Appellant purposefully chose not to obtain his medical records from the Office of Veteran's Affairs to hide evidence of his competency. The State also reminded the jury that Appellant had to prove his incompetence and suggested that the jury should consider Appellant's choice not to testify in making its decision. The State further told the jury that the community and other criminal offenders were "watching" and urged the jury not to "set a bad precedent" by finding Appellant incompetent when the evidence showed otherwise. Appellant's attorney did not object to the State's closing argument, and the jury found him competent to stand trial.

Prior to the start of jury selection for the trial on the merits, Appellant informed the trial court that he believed he was competent to stand trial and that he did not agree with his attorney's decision to request a competency trial. Appellant then requested a continuance to hire another attorney to represent him. The trial court denied Appellant's motion for continuance, and Appellant proceeded to trial with his attorney.

At trial, N.P., Appellant's minor daughter and the victim, testified that, while she was staying at Appellant's apartment one night, she awoke on Appellant's bed after she had fallen asleep on the living room couch. Appellant then took off her pants and asked her to lie sideways in front of him on the bed. Appellant put his "wrong spot"[2] in between the cheeks of her buttocks. Appellant had on "boxers" with "a hole in them," and Appellant's actions made her so uncomfortable that she could not speak and was unable to tell him to stop. When she tried to get up, Appellant pulled her back toward him.

N.P. stated that Appellant placed his "wrong spot" on her buttocks "every single time" she spent the night with him. N.P. noted that Appellant also touched her "boobs," underneath her shirt, every time she spent the night with him. N.P. stated that Appellant tried to make her touch his "wrong spot" ten or eleven times. N.P. described Appellant's "wrong spot" as "soft, slimy, [and] hairy."

D.R., the mother of N.P., testified as an outcry witness. On November 14, 2010, D.R. questioned N.P. about her overnight visits with Appellant. When D.R. asked N.P. if Appellant had ever touched her inappropriately, N.P. told D.R. that she had felt Appellant's "wrong spot"[3] on her "bottom" the night before as they watched a movie in his bed. N.P. informed D.R. that she had on panties and Appellant had on boxers. N.P. also told D.R. that, when she tried to get up, Appellant squeezed her and would not let her leave.

Kelli Crouse also testified as an outcry witness. Crouse testified that she interviewed N.P. at the Child Advocacy Center on November 18, 2010. N.P. told Crouse that she had stayed with Appellant the night before the interview and that she had felt his "wrong spot" on her "bottom" after he moved her from the couch

---

[2]When State's counsel asked N.P. to describe a "wrong spot," she replied, "The nuts."

[3]D.R. testified that she used the term "wrong spot" to refer to a man's sexual organ when speaking with her children and that she believed N.P. had learned the term from her.

to his bed. N.P. said that Appellant put his "wrong spot" on her "bottom" "every time she was asleep" and often told her that he loved her in the process.

N.P. also told Crouse about a specific incident that occurred while she was staying with Appellant at his father's house. Appellant was "drinking beer to get drunk" when he put N.P. on the bed and went "to get his boxers on." Appellant came back wearing the boxers with "the hole" and then put his "wrong spot" on N.P.'s "bottom."

N.P. further informed Crouse that Appellant often touched her "boobs," underneath her shirt, while he told her that he loved her. N.P. stated that, when she was four or five, Appellant "would stick his wrong spot out and grab her arm and let her touch it." N.P. described Appellant's "wrong spot" as "slimy and yucky." Appellant did not object to Crouse's testimony.

Appellant testified and denied all of the allegations against him. Appellant acknowledged that N.P. often slept in his bed with him and that he sometimes "snuggle[d]" with her so her buttocks faced him. Appellant further stated that he sometimes wore only boxers when he slept in the same bed as N.P. but argued that he never intended to gratify his sexual desires by doing so.

## II. *Issues Presented*

Appellant presents three points of error on appeal. Appellant's first point of error is his challenge to the sufficiency of the evidence. In his second and third points of error, Appellant claims he was prejudiced by the failure of his trial counsel (1) to object to the State's closing argument during his competency trial and (2) to object to the testimony of the State's second outcry witness.

## III. *Standards of Review*

We review the sufficiency of the evidence under the standard in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim.

App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). We review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. We defer to the jury's credibility determinations and the weight to be given to the testimony because it is the jury's duty to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We presume that the jury resolved conflicting evidence in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326.

To determine whether Appellant received ineffective assistance of counsel, we must first determine whether he has shown that his attorney's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Andrews v. State*, 159 S.W.3d 98 (Tex. Crim. App. 2005). If Appellant meets this burden, we then determine whether there is a reasonable probability that the result would have been different but for his attorney's errors. *Strickland*, 466 U.S. at 694. To be successful on his claims of ineffective assistance of counsel, Appellant must show both deficient performance and prejudice. *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012) (citing *Strickland*, 466 U.S. at 687).

IV. *Analysis*

A. *Sufficiency of the Evidence*

Appellant argues that the evidence at trial was legally insufficient to support his conviction. Appellant contends that the evidence failed to show he acted with the requisite intent. We measure the sufficiency of the evidence by the elements of

the offense as defined in a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

A person commits the offense of indecency with a child if he engages in sexual contact with a child younger than seventeen years of age. PENAL § 21.11(a)(1). If committed with the intent to arouse or gratify the sexual desire of any person, "sexual contact" may refer to any of the following acts: (1) any touching by a person, including touching through the clothing, of the anus, breast, or any part of the genitals of the child or (2) any touching of any part of the body of the child, including touching through the clothing, with the anus, breast, or any part of the genitals of a person. *Id.* § 21.11(c).

The testimony of the child victim alone is sufficient to support a conviction of indecency with a child. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2013); *Chapman v. State*, 349 S.W.3d 241, 245 (Tex. App.—Eastland 2011, pet. ref'd). The intent necessary for a conviction of indecency with a child may be inferred from conduct, remarks, or all the surrounding circumstances. *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). Intent can be inferred from conduct alone, and no oral expression of intent or visible evidence of sexual arousal is necessary. *Id.*

N.P. testified that Appellant placed his genitals on her buttocks on numerous occasions and would not let her go when she attempted to pull away. N.P. further testified that Appellant often touched her breast underneath her shirt. Crouse testified that N.P. informed her that Appellant told her he loved her each time he inappropriately touched her. This testimony provided the jury with sufficient evidence to conclude that Appellant intended to arouse or gratify his sexual desire when his genitals contacted N.P.'s buttocks and when he touched N.P.'s breast. We overrule Appellant's first point of error.

*B. Ineffective Assistance of Counsel*

In his second and third points of error, Appellant contends he received ineffective assistance of counsel when his trial attorney failed to make certain objections at his competency trial and during the guilt/innocence phase of trial. Appellant must show ineffective assistance by demonstrating that his attorney's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88. 694; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). We may dispose of Appellant's claims if he fails to satisfy either prong of the *Strickland* test. *Cox*, 389 S.W.3d at 819 (citing *Strickland*, 466 U.S. at 697).

When reviewing an ineffective assistance of counsel claim, we indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Where the record is silent, we cannot speculate on trial counsel's strategy. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). An allegation of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* The record on direct appeal is generally undeveloped and rarely shows that trial counsel's performance was so lacking as to overcome the presumption of reasonable conduct. *Id.* at 813–14.

### 1. *Failure to Object to State's Closing Argument*

Appellant first argues that he received ineffective assistance of counsel when his attorney failed to object to several arguments the State made at the closing of

Appellant's competency trial. Appellant suggests that the State improperly (1) argued that Appellant, to hide evidence of his competency, purposefully failed to obtain his medical records for Dr. Medi to review; (2) suggested that Appellant's failure to testify was evidence of his competency; and (3) instructed the members of the jury to remember that the community and other criminal offenders were "watching" their decision.

Even if we assume that the failure of Appellant's attorney to object to these arguments was error, which we do not, Appellant cannot satisfy *Strickland*'s prejudice requirement. Both of the experts who testified at the competency hearing testified that Appellant was competent to stand trial, and no evidence indicated otherwise. Before the start of jury selection for the trial on the merits, Appellant informed the trial court that he disagreed with his attorney's decision to pursue a competency trial and that he believed himself to be competent to stand trial. Given the overwhelming evidence of Appellant's competence and the acknowledgments by Appellant, his attorney's failure to object to the State's closing argument at his competency trial did not affect the outcome of that proceeding. Appellant has not shown that the result of the proceeding would probably have been different but for counsel's alleged errors.

Because Appellant has failed to establish he was prejudiced by his attorney's failure to object to the State's closing argument, we need not conduct an in-depth analysis under *Strickland*'s first prong. We overrule Appellant's second point of error.

### 2. *Failure to Object to Testimony of State's Second Outcry Witness*

Appellant also contends he received ineffective assistance of counsel when his attorney failed to object to Crouse's testimony. Appellant argues that Crouse's testimony did not meet the outcry witness exception in TEX. CODE CRIM. PROC.

ANN. art. 38.072, § (2)(a) (West Supp. 2013) because a previous outcry witness had already testified to the same events to which Crouse testified.

Article 38.072 allows for the admission of hearsay statements made by child abuse victims under the age of fourteen. To qualify for the hearsay exception, the statement must describe the alleged offense and must have been made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. CRIM. PROC. art. 38.072, § 2(a).

An outcry witness is specific to an event, rather than a person. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (citing *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990)). Hearsay testimony from several outcry witnesses may be admissible under Article 38.072 if the witnesses testify about different events. *Lopez*, 343 S.W.3d at 140. Only one outcry witness may testify as to a single event. *Id.*

This court previously addressed multiple outcry witnesses in *Turner v. State*, 924 S.W.2d 180 (Tex. App.—Eastland 1996, pet. ref'd). Although the victim in *Turner* first told a counselor that the defendant had penetrated her vagina with his finger, she did not tell the counselor that the defendant had also penetrated her vagina with his penis. 924 S.W.2d at 183. The first time the victim revealed that the defendant had penetrated her vagina with his penis was during a conversation with a police officer, and that police officer could properly testify about this separate event of abuse as a second outcry witness. *Id.*

In this case, D.R. testified that N.P. informed her about a single event of sexual abuse that occurred when Appellant placed his genitalia on N.P.'s buttocks on November 13, 2010. Crouse then testified as to N.P.'s later outcry concerning two additional and distinct events of sexual abuse by Appellant: (1) when Appellant inappropriately touched N.P.'s breast and (2) when Appellant touched

N.P.'s buttocks with his genitalia on November 17, 2010.  Both D.R. and Crouse could properly testify as outcry witnesses, as N.P. made a specific outcry to each of them concerning separate incidents of sexual abuse by Appellant.

Because Crouse could properly testify as a second outcry witness, Appellant cannot show that his attorney's decision not to object to her testimony constituted deficient performance.  Based on Appellant's failure to satisfy *Strickland*'s first prong, we need not address the second prong.  We overrule Appellant's third point of error.

## V. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


February 6, 2014

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.