NO. 07-08-0353-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

OCTOBER 7, 2009
_____

GINGER BROWN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 31ST DISTRICT COURT OF LIPSCOMB COUNTY;

NO. 1152; HONORABLE STEVEN EMMERT, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Ginger Sue Brown, was convicted of aggravated sexual assault of a child[1] and subsequently sentenced to 10 years in the Institutional Division of the Texas Department of Criminal Justice. By two issues, appellant contends that the trial judge committed reversible error by 1) allowing hearsay testimony of a forensic interviewer to be admitted before the jury, and 2) refusing to admit the previously recorded statement of appellant's co-defendant into evidence. We affirm.

---

[1] See TEX. PENAL CODE ANN. § 22.021 (Vernon Supp. 2008).

Factual and Procedural Background

On March 5, 2006, Jimmy Brown, the husband and co-defendant of appellant, was arrested by Lipscomb County Deputy Jessica Kay for violating a protective order. While being transported to jail, Brown began relaying information to Kay of an alleged sexual assault of appellant's son, Joey, that had occurred on or about March 2, 2002. After arriving at the Lipscomb County jail, Brown gave two written statements and a video taped statement to deputies. After receiving this information, the Lipscomb County Sheriff's Office dispatched another deputy, Jason McCarthy, to pick up the appellant for questioning. Upon being brought to the jail, and after being advised of her right to remain silent, appellant gave two written statements and a video taped statement admitting her participation in the sexual assault. During her interviews, appellant stated that it was Jimmy's idea for her to have sex with her son. She further stated that Jimmy was physically and emotionally abusive to her and the children. The statements did not, however, contend that on the night in question that Jimmy physically forced her to have sex with her son.

At trial, in addition to the deputies who took the statements in the case, the State produced the testimony of Shelly Bohannon, a forensic interviewer with the Bridge Children's Advocacy Center in Amarillo. Bohannon was qualified as an expert forensic interviewer. She testified about her interviews of Joey. It was a portion of Bohannon's testimony that gave rise to appellant's first contention.

The State also presented the testimony of the co-defendant, Jimmy, to the jury. Jimmy had given a number of statements to the authorities that contained inconsistencies. During appellant's presentation of the evidence, Jimmy was recalled to the witness stand and those inconsistencies were explored. At one point, appellant attempted to admit the video taped statement given by Jimmy. From the record, it appeared that the offer was made in an attempt to impeach Jimmy's testimony. The trial court sustained the State's objection to the introduction of the statement. The exclusion of the video taped statement is the basis of appellant's second contention.

We disagree with appellant's contentions and will affirm the judgment of the trial court. Both of appellant's contentions deal with the trial court's evidentiary rulings.

Standard of Review

We review a trial court's decision regarding the admissibility of evidence under an abuse of discretion standard. See Cameron v. State, 241 S.W.3d 15, 19 (Tex.Crim.App. 2007). Because trial courts are in the best position to decide questions of admissibility, appellate courts will uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement. Id. An appellate court may not reverse a trial court's decision regarding the admissibility of evidence solely because the appellate court disagrees with the decision. Id. A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. See Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g).

Hearsay Objection to Bohannon's Testimony

Appellant lodged hearsay objections to much of Bohannon's testimony. To properly consider these objections, we must first determine whether or not Bohannon was offered as an expert. An expert is someone whose "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, . . . ." See TEX. R. EVID. 702.[2] The record reflects that the State spent a substantial amount of testimonial time going over the witness's education, training, and experience as a forensic interviewer. Additionally, Bohannon testified about the procedure for conducting a valid forensic interview, especially as it related to child victims of abuse. After a hearing outside the presence of the jury, the trial court accepted Bohannon as an expert witness on the subject of forensic interviews. Additionally, the State had filed a notice pursuant to the Texas Code of Criminal Procedure to allow Bohannon's testimony to be received as an "outcry witness." See TEX. CRIM. PROC. CODE ANN. art. 38.072 (Vernon 2005). At the conclusion of the hearing, the record reflects that the trial court had ruled that Bohannon's testimony could also be received as an "outcry witness." Appellant's objections as to hearsay purport to find error with each ruling by the trial court.

The following is the portion of Bohannon's testimony that appellant objects to on appeal. (All questions were by the State on direct examination.)

Q. Okay. So he said that his mom had not abused him, is that right?

---

[2] Further references to the Texas Rules of Evidence will be by reference to "Rule ___."

4

A. That's correct. That's what he said.

Q. Okay. Did he talk about seeing the Defendant's lingerie?

A. He talked about some–some clothes that may have holes in them, but I don't know if he was talking about lingerie or day wear or really what that was.

Q. Did he ever express to you concerns that his mother would walk around in provocative clothing?

A. No.

Q. Did he ever say he saw her in the clothing?
A. In provocative, no.


Q. Okay.  Now did he discuss the role that the Co-Defendant Jimmy Brown played?

A. In which?

Q. In the sexual assault.

A. He - - he talked about Jimmy having his mother, Joey's mother go and get him out of his bed and bring him into her bedroom and place him in the bed with her and that he sat in a chair or recliner next to the bed and just watched.

Q. And he said he was just watching.  Did he say what his mother was doing?

A. He - - he said he couldn't remember.

Q. Did he ever give you any details as to the sexual assault by the Defendant and the Co-Defendant against him?

A. No, he never did.

Q. Is it - - but he never specifically said about his mother's private parts or anything happening to him by his mother; is that correct?

A. No he denied that.

Q. Okay. Ms. Bohannon, based on your training and experience and the number of forensic interviews that you have had with children, is it common or uncommon for children not to disclose to you what's been happening?

A. We see that pretty frequently.

Q. Okay. Is it common or uncommon for children to only partially disclose?

A. We see that quite a bit too, yes.

Initially, we observe that whether or not Bohannon was an "outcry witness" may be determined by whether or not the statements made by Joey were sufficient to describe the alleged sexual assault. See TEX. CRIM. PROC. CODE ANN. art. 38.072 § 2. A review of the objected to testimony would lead to the conclusion that it did not describe the assault, in fact, Joey said he could not remember or it did not happen. See Garcia v. State, 792 S.W.2d 88, 90-91 (Tex.Crim.App. 1990) (stating that the statement to an outcry witness must describe the alleged offense in some discernable manner as opposed to a general allusion that something in the area or child abuse was going on). Here the child did not give any testimony that could be viewed to sustain the requirement of the statute.

However, this is not the end of our inquiry. The State posits that the objected to evidence was not offered for the truth of the matters asserted, rather they were offered to establish the underlying facts or data to support the expert's opinion about the reluctance of the victim to testify. In this regard it appears that the jury could use this information to evaluate Bohannon's testimony that child victims commonly are reluctant to disclose the facts of the assault and, in fact, may deny or only partially disclose any information about the event. See Rule 705(a); Austin v. State, 222 S.W.3d 801, 812 (Tex.App.–Houston [14th Dist.] 2007, pet. ref'd). Accordingly, the evidence was admissible for that purpose.

6

Appellant, however, contends that, even if it was admissible for that purpose, there was a danger that the jury would use the information for other purposes than the evaluation of the expert's opinion. See Rule 705(d). Our review of the record does not support appellant's contention. This evidence was given to explain the victim's reluctance to discuss the events at issue. Further, appellant's statements admitting the sexual assault were admitted prior to Bohannon's testimony. Therefore, there could be little danger of the jury using the underlying interview to convict appellant of the offense for which she had already confessed in written and video taped statements. Finally, the record further reflects that the victim later testified before the jury and testified to some of the events of the assault but again stated that he could not remember some of the events. Based on the record before us, we cannot say the trial court abused its discretion in admitting the testimony of Bohannon. See Cameron, 241 S.W.3d at 19. Accordingly, appellant's first issue is overruled.

Previously Recorded Statement of Jimmy Brown

Appellant next contends that the trial court committed reversible error in refusing to admit the previously recorded statement of Jimmy Brown into evidence. According to appellant, the statement was admissible under the provisions of Rule 803(24) as an admission against interest. See Rule 803(24). However, at trial appellant offered the statement as a prior inconsistent statement. See Rule 801(e)(1)(A). As such, appellant's complaint on appeal does not comport with his objection at trial. See Reyna v. State, 168 S.W.3d 173, 179 (Tex.Crim.App. 2005) (an offer of evidence under one theory does not preserve an appeal that the evidence was admissible under a different theory).

Accordingly, nothing has been preserved for appeal. See TEX. R. APP. P. 33.1(a)(1)(A). Therefore, appellant's second issue is overruled.

Conclusion

Having overruled appellant's issues, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice


Do not publish.