# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00030-CR

---

**Sean Anderson, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 390TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-22-904055, THE HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury found Sean Anderson guilty of aggravated sexual assault of Bella[1], who was younger than six years old. *See* Tex. Penal Code §§ 22.011, .021. The jury assessed punishment at thirty-one years in prison. *See id.* § 22.021(f). Anderson complains that the trial court erred by admitting an outcry statement and asserts that the trial court erred in admitting the hearsay statement of the child from her medical records. We will affirm the judgment.

## DISCUSSION

### Outcry Statement

By his first point of error, Anderson contends that the trial court erred by admitting an outcry statement made by Bella to forensic investigator Grace Moon when the indicia showed that Bella did not understand the need to tell the truth and did not have the ability

---

[1] Bella is a pseudonym.

to observe, recall, and narrate the events. "Because it is often traumatic for children to testify in a courtroom setting, especially about sexual offenses committed against them, the Legislature enacted [Texas Code of Criminal Procedure] Article 38.072 to admit the testimony of the first adult a child confides in regarding the abuse." *Gibson v. State*, 595 S.W.3d 321, 325 (Tex. App.—Austin 2020, no pet.) (quoting *Martinez v. State*, 178 S.W.3d 806, 810-11 (Tex. Crim. App. 2005)). The outcry witness's testimony will not be excluded as hearsay if "the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstance of the statement." *See* Tex. Code Crim. Proc. art. 38.072, § 2(b)(2). We review a trial court's admission of testimony from an outcry witness for an abuse of discretion. *Gibson*, 595 S.W.3d at 325 (citing *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990)).

Indicia of reliability that the trial court may consider include (1) whether the child victim testifies at trial and admits making the out-of-court statement; (2) whether the child understands the need to tell the truth and has the ability to observe, recollect, and narrate; (3) whether other evidence corroborates the statement; (4) whether the child made the statement spontaneously in the child's own terminology or whether evidence exists of prior prompting or manipulation by adults; (5) whether the child's statement is clear and unambiguous and rises to the needed level of certainty; (6) whether the statement is consistent with other evidence; (7) whether the statement describes an event that a child of the victim's age could not be expected to fabricate; (8) whether the child behaves abnormally after the contact; (9) whether the child has a motive to fabricate the statement; (10) whether the child expects punishment because of reporting the conduct; and (11) whether the accused had the opportunity to commit the

2

offense. *Norris v. State*, 788 S.W.2d 65, 71 (Tex. App.—Dallas 1990, pet. ref'd); *Buckley v. State*, 758 S.W.2d 339, 343-44 (Tex. App.—Texarkana 1988, no pet.).

At the pretrial hearing on the admissibility of the outcry statement, Bella's mother testified that she noticed "something inappropriate going on with my boyfriend at the time and my daughter." Anderson was her boyfriend, and her daughter Bella was four years old at the time. Bella's mother testified that, after noticing the inappropriate action, she asked Bella only if she took her clothes off or if Anderson did; she could not at trial remember Bella's answer. She called the police and later took Bella to the Center for Child Protection for a forensic interview.

Forensic investigator Moon testified that she had two sessions with Bella the day of the incident. She described Bella as initially playful, though when Moon broached the topic of Bella's body as a subject, Bella "kind of closed down a little bit and would cover herself and said she didn't want to talk about that." Moon said that Bella's demeanor "changed dramatically" when asked about her body parts. Moon testified that, after a break, Bella "talked about being touched in the part that she goes pee with, the part that he goes with, 'he' being [Anderson], that he was slapping her against him and that she was under the bed when this happened." Bella said that she was lying on her back and that Anderson pulled her toward him and took off her clothes. Anderson was not wearing any clothes, and she could see "[t]he part that he goes pee and his butt." She described the noise they made when they were touching as "clapping." Moon testified that Bella said that when her mother saw what was happening, "[h]e got off of her."

Moon testified that she asked questions to determine whether Bella would tell the truth. Moon marked in her notes that Bella said she knew what the truth was, though she later told Moon she forgot what it means to tell the truth. Bella correctly identified the wall color and

3

said that someone who said it was a different color would be telling a lie. But when Moon asked Bella the color of Moon's car, Bella responded "red" even though she had no way of knowing its color; when told she should not guess about things she did not know, Bella nevertheless again said Moon's car was red. Moon asked Bella what her "ocular hue" was and, when Bella did not respond immediately, Moon reminded Bella not to guess if she did not know the words in a question or the answer to a question. Moon said Bella did not acknowledge the distinction.

At the close of the pretrial examination, the trial court found that Bella's outcry statement made to Moon was reliable based upon its time, content, and circumstances. The trial court recited the relevant standard. *See* Tex. Code Crim. Proc. art. 38.072. While Bella's persistence in guessing the color of Moon's car and hesitation to ask for help understanding an unfamiliar term may have weighed against the reliability of Bella's outcry, they are balanced by evidence that she understood the difference between the truth and a lie. That conflict was an issue for the trial court to assess when determining the reliability of the child's statement regarding an alleged recent assault. On the record presented, we cannot say that the court abused its discretion by finding the outcry statement reliable after the hearing conducted outside the presence of the jury.

We note further that the trial court questioned Bella herself at trial and found that she knew the difference between a truth and a lie. Though she then testified that she did not remember or recognize Anderson, her inability to recognize or remember Anderson does not show that the trial court erred in admitting her outcry statement based on the *Norris* factors. Further, the jury could weigh her inability to remember or recognize Anderson at trial in their consideration of the outcry testimony and her hearsay statements contained in it.

4

The portions of the outcry testimony Anderson cites do not demonstrate that the trial court abused its discretion in admitting the outcry. Moon testified that at one point Bella said that Anderson was sitting on the child, which Anderson asserts was "impossible." Anderson deems "highly improbable" Bella's reported statement that, while she was lying under the bed on her back, Anderson "pulled her towards him and got her clothes [off], got on her, and the part where she goes pee touched the part where he goes pee and that he was slapping her against him." Moon reported that, when asked whether the contact hurt, Bella said "she didn't feel anything," which Anderson again deems "impossible." We do not find Anderson's characterization of this testimony persuasive. The fact that a four-year-old girl who noticeably withdraws when asked about someone touching her says she "didn't feel anything" when asked if the contact hurt does not render her outcry statement unreliable. Especially in light of Bella's mother's testimony, the trial court did not abuse its discretion by admitting the outcry as reliable.

Bella's mother testified that she and her daughters were visiting Anderson's apartment on the day of the assault. When visiting, she preferred to keep the girls in Anderson's bedroom with her so she could monitor them rather than leave them in the areas shared with Anderson's roommates. There was a pallet underneath the bed where the children could nap if needed. She testified that, when she and Anderson had "intimate time," the girls would often be at the computer desk playing games or watching cartoons. Bella's mother testified that, on the day of the assault, she was lying on her back near the edge of the bed with a blanket over her while Anderson knelt beside the bed and performed oral sex on her. At some point, she began to hear "wet noises down on the ground" that were not coming from her, so she sat up to investigate. Bella's mother testified that she saw that Anderson did not have his pants on and that Bella was across his lap with no pants on; Bella's mother testified that she could not

5

remember whether Bella had on underwear but also that she could see Bella's bare bottom. She testified that Anderson quickly moved Bella to the side and put her pants on. Bella's mother testified that Anderson said there had been no penetration. This description paralleled Moon's testimony on Bella's description of the assault as well as Bella's statement that her younger sister was watching something on the computer at a desk in the bedroom, that Bella was under the bed because her mother had told her to lie under the bed, and that her mother was on top of the bed. Though the trial court had already made its reliability decision before trial, the consistency of Moon's testimony with Bella's mother's testimony supports the reliability of the outcry statement. *See Norris*, 788 S.W.2d at 71. The vocabulary of the child's statement, Bella's withdrawal on the mention of the touching, and Anderson's opportunity to commit the offense as described all support the court's decision on reliability. *See id.* We overrule point of error one.

**Medical Records**

By his second point of error, Anderson contends that the trial court erred in admitting Bella's hearsay statement from her medical records because there was an indication that she did not know the importance of being truthful. Anderson did not raise this or any other objection to the admission of the medical records or the testimony of the sponsoring Sexual Assault Nurse Examiner Kim Sanchez. Because Anderson did not raise this objection at trial, his second point of error is waived. *See* Tex. R. App. P. 33.1(a); *Fernandez v. State*, 805 S.W.2d 451, 455-56 (Tex. Crim. App. 1991) (failure to timely object waives error, and hearsay admitted without objection is probative evidence). Further, there is no indication in the medical records or Sanchez's testimony that Bella did not know the importance of being truthful. We have already

concluded that the trial court did not abuse its discretion by concluding that Bella's outcry statement to the forensic investigator was reliable.  We overrule point of error two.

**CONCLUSION**

We affirm the judgment of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Kelly

Affirmed

Filed:   August 9, 2023

Do Not Publish